SAMUEL JONES, JR. *v.* LEO D. JENKINS, WARDEN, INDIANA STATE PRISON.

[No. 876S250. Filed February 21, 1978.]

*Harriette Bailey Conn,* Public Defender of Indiana, *Kyle M. Payne,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Arthur,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Jones was sentenced from the Grant County Circuit Court in November, 1963, to life imprisonment for the crime of second-degree murder. He challenges the constitutionality of Ind. Code § 11-7-6.1-2 (Burns Supp. 1976) [Acts 1974, P.L. 43, § 1, p. 181 (repealed 1975)], and the construction of the statute which it replaced, Ind. Code § 11-7-6-1 (Burns 1973) [Acts 1933, ch. 164, § 1, p. 858; Acts 1947, Ch. 85, § 1, p. 257 (repealed 1974)]. Both of these statutes deal with the granting of "good time" credits to decrease the amount of time served on criminal sentences. Appellant has never earned good time credits, since he has a sentence of imprisonment for life.

The former statute on the granting of good time credits to inmates, Ind. Code § 11-7-6-1 (Burns 1973), provided in part:

"Every inmate who is now or hereafter may be confined in the Indiana State Prison, Indiana Reformatory, or Indiana Women's Prison, for a *determinate term* of imprisonment, and who, while an inmate in such institution, shall have no infractions of the rules and regulations of the institution, nor infractions of the laws of the state of Indiana or laws of the United States recorded against him or her,

and who performs in a faithful manner the duties assigned to him or her while an inmate, shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective years of his or her sentence, including time being served for unpaid fine or costs, and pro rata for any part of a year when the sentence is for more or less than a year." (emphasis supplied)

Thus, only inmates with determinate sentences received good time credits under this law. Those serving life sentences under the old law, including appellant Jones, never received good time credits. Jones argues that a life sentence is determinate since it possesses an inherent certainty of time based on the fixed life span of an inmate. However, a determinate sentence has been defined as one for a definite or certain number of years fixed by a court. *Hinkle* v. *Dowd,* (1944) 223 Ind. 91, 58 N.E.2d 342. Further, a life sentence is neither determinate nor indeterminate. *Brown* v. *State,* (1975) 262 Ind. 629, 322 N.E.2d 708. There is thus no merit to appellant's argument that Ind. Code § 11-7-6-1 (Burns 1973) should be construed to allow the granting of good time credits to lifers.

The constitutionality of the more recent good time statute, Ind. Code § 11-7-6.1-2 (Burns Supp. 1977), is next challenged by appellant. This statute provided that:

"Every inmate who is now or hereafter may be confined, upon conviction of a felony, in a correctional institution under the supervision of the Indiana Department of Correction, *except those inmates under sentence of death or life imprisonment,* shall at all times during such confinement be assigned to one (1) of the following four (4) time earning classes and shall be entitled to a diminution of time from his or her sentence as indicated in the following table for the respective months of his or her sentence prorated for any part of a month, including time being served for unpaid fines or costs. Class assignments shall be made in accordance with the procedure provided in this chapter [11-7-6.1-1— 11-7-6.1-8]. This good time shall apply both toward an inmate's discharge date and his parole eligibility date." (emphasis supplied)

Appellant's argument is that this explicit exclusion of lifers from the benefit of good time credits is a violation of equal

protection under the Fourteenth Amendment of the United States Constitution. A fundamental right, the right to be at liberty, is said to be at stake, necessitating the strict scrutiny test and putting the burden on the state to identify a compelling state interest behind the classification scheme. Alternatively, if the rational basis test for equal protection is to be applied, appellant argues that all inmates, lifers as well as non-lifers, are part of a single class since they all are subject to the same institutional environment and regulations. The purpose of the good time law is said to be the regulation of conduct within the prison institution, and its use to regulate the conduct of some inmates and not others is asserted to have no rational basis.

In *McGinnis* v. *Royster*, (1973) 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282, the United States Supreme Court dealt with an equal protection challenge to a New York statute which denied good time credits to certain state prisoners during presentence incarceration in county jails. Holding the rational basis test applicable to a challenge in this area, the court stated, at 410 U.S. 269-70, 93 S.Ct. 1059, 35 L.Ed.2d 288-89:

"We note, further, that the distinction of which appellees complain arose in the course of the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society. The determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them. James v. Strange, 407 U.S. 128, 140, 92 S.Ct. 2027, 2034, 32 L.Ed.2d 600 (1972); Lindsey v. Normet, 405 U.S. 56, 73-74, 92 S.Ct. 862, 874-875, 31 L.Ed.2d 36 (1972); Schlib v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 20 L.Ed.2d 502 (1971); Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Appellees themselves recognize this to be the appropriate standard. For this Court has observed that '[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations,—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70,

33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose. . . ."

For the same reasons, we hold the rational basis test applicable to the present equal protection challenge. The fundamental right to liberty is not at stake here. *Accord, Trivento* v. *Commissioner of Corrections,* (1977) 135 Vt. 475, 380 A.2d 69. Appellant has not had such a right since November of 1963 when, presumably with all requisite due process, he was found guilty of murder and sentenced to life imprisonment. Appellant's goal is to procure the benefit of good time credits. Good time credits for satisfactory behavior while in prison are not guaranteed by the Constitution but are rather, at best, a state-created right. *Wolff* v. *McDonnell,* (1974) 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951. Any concept of "liberty" only attaches to such credits when the state in fact grants them. Lifers in Indiana have never had good time credits granted to them, and thus have no constitutional "liberty" interest with respect to such credits in any sense.

We thus examine the basis and purpose of the classification created by Ind. Code § 11-7-6.1-2 (Burns Supp. 1977), in light of "the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society," as described in *McGinnis.* These interests, insofar as good time credits are concerned, have no application to lifers. Good time is a facet of the sentence, and the sentence is the only focus for determining class. *Cf. DeSimone* v. *Norton,* (D. Conn. 1975) 404 F.Supp. 964, 967. The institutional environment and regulations of prison do not affect the length of sentence or good time credits, and thus appellant's argument that these factors form the basis of classification has no merit. The sentencing classification in issue is lifers as distinguished from non-lifers. Lifers cannot

earn earlier release through good time credits, and thereby have the length of their sentences reduced. Possibilities of parole or pardon that may be open to lifers do not affect the length of their sentences, which always remain life in prison. This sentence is based upon a determination by the legislature that a person committing a certain crime is so dangerous that he must be kept in prison the remainder of his life. As stated by the court in *Robinson* v. *Clark,* (N.D. Ga. 1967) 278 F.Supp. 559 at 560:

> "It is difficult for the court to see how 'good time' can ever apply to or be of any benefit to a person serving a life sentence. How can it ever be computed? . . . [G]ood time allowances generally do not, and in logic cannot, be applied against life terms. . . ."

Legislative solutions must be respected if the distinctions drawn have some basis in practical experience or if some legitimate state interest is advanced. *McGinnis, supra,* 410 U.S. at 276, 93 S.Ct. at 1062-63, 35 L.Ed.2d at 292. Our legislature has determined that the dangerousness of those persons sentenced to life imprisonment necessitates a different type of release program than that used with non-lifers, and this distinction is constitutional.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 372 N.E.2d 1163.