George D. MURPHY, Appellant
(Petitioner Below),

v.

INDIANA PAROLE BOARD et al.,
Appellees (Respondents Below).

No. 476S101.

Supreme Court of Indiana.

Nov. 27, 1979.

Harriette Bailey Conn, Public Defender, Kyle M. Payne, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellees.

PRENTICE, Justice.

This is an appeal from the denial of relief sought by Appellant, Petitioner below, (Murphy) upon a writ of habeas corpus. The petition and subsequent proceedings are perplexing, to say the least, and fit no pattern known to us. Although the petition contains a conclusory allegation that Murphy is being unlawfully restrained of his

liberty, the factual allegations relate the events of his hearing for parole release, before the Indiana Parole Board (Board), the denial of parole by the Board and the conclusory allegation that the action of the Board denied him due process of law.

Considered as a petition for a writ of habeas corpus, the writ should not have issued, because it disclosed upon its face that Murphy was not entitled to immediate release. *Hawkins v. Jenkins,* (1978 Ind., 374 N.E.2d 496; *Young v. Duckworth,* (1979) Ind., 394 N.E.2d 123. The court and the parties, nevertheless, proceeded to an evidentiary hearing, apparently considering the petition as one for relief under Indiana Rules, Post Conviction 1, § 1(a)(5); at the conclusion of the hearing, the trial judge ruled that the "relief demanded" be denied and that the writ be dissolved. In essence, the determination was that the Board had complied with the statutory mandate for parole release hearings.

 As an appeal from the denial of post conviction relief, this appeal should have been filed with the Court of Appeals, inasmuch as Murphy's minimum sentence is less than ten years. Ind.R.P.C. 1, § 7; A.P. 4(A)(7). As an appeal from the denial of release in a habeas corpus, it also should have been filed with the Court of Appeals, as the denial of relief arose out of parole release hearing, which is not a criminal proceeding. Ind.R.A.P. 4(A)(9) and 4(B)(4). To avoid further delay of the matter, however, we shall entertain the appeal under our discretionary authority. *Young v. Duckworth, supra.*

Murphy was convicted of voluntary manslaughter, Ind.Code § 35–13–4–2 (Burns 1975), from a guilty plea, and was sentenced to imprisonment for not less than two nor more than twenty years. For that crime, he was incarcerated at the Indiana State Prison in Michigan City on August 6, 1974. On May 8, 1975, he was brought before the Board for parole consideration, pursuant to Ind.Code § 11–1–1–9 (Burns Supp.1978) which requires that every new inmate be considered for parole within his first year of incarceration. During the 30 days prior to an inmate's appearance before the Board, the Board members are able to study the inmate's institutional file, which includes his precommitment investigation report, his admission summary, a psychologist's report, a report by the reception-diagnostic center, his progress report at the prison, and any letters of recommendation which the inmate may possess. At Murphy's hearing, he was identified, and was asked whether he was a friend of the man he had killed and whether they had been drinking at the time of the killing. Murphy was informed that he would not be paroled at that time because of the seriousness of the crime which he had committed. He was then asked if he had anything to say, but no response is evident in the record before us. The entire hearing lasted two to five minutes. A week later, Murphy received written confirmation that his parole had been denied because of the seriousness of his offense.

Murphy then filed a *pro se* petition for a writ, as hereinbefore mentioned, in the LaPorte County Circuit Court, challenging the Parole Board's actions. A public defender was appointed to represent him. A hearing was had upon the petition, at which Appellant testified as to the events of his parole release hearing and then called upon John Raschka, a parole officer and secretary to the Parole Board Commission, who described the entire process by which an inmate is considered for parole. The Board presented no evidence. The trial court made findings of fact and conclusions of law, denied the relief prayed for, and dissolved the writ.

By this appeal, Appellant has framed five specific issues for our consideration:

(1) Did the Board violate Murphy's right to due process of law, by failing to give adequate and sufficient reasons for the denial of parole?

(2) Does due process require that an inmate have access to the information contained in the institutional file, which information is considered by the Board in determining eligibility for parole?

(3) Does the statute providing for the possibility of parole give adequate standards and guidelines for the determination of parole decisions?

(4) Is the "seriousness of the offense" for which the inmate was committed a valid criteria for denial of parole?

(5) Did the Parole Board consider "all pertinent information" as required by Ind. Code § 11–1–1–9?

## JURISDICTION

■ The Board contends that this Court is without jurisdiction to review the actions of the Indiana Parole Board, citing Ind. Code § 11–1–1–8 (Burns 1973) which states in part:

"There shall be no appeal from the decision in any matter concerning parole."

Furthermore, the State relies on *Terry v. Byers,* (1903) 161 Ind. 360, 68 N.E. 596, wherein this Court, in discussing the discretionary powers of the Board of Managers— the predecessor of the Parole Board, stated:

" * * * the punishment to be adjudged in each case of conviction is for the maximum time prescribed by the statute. This term may be shortened by the good behavior of the person in custody, and the Board of Managers of the reformatory is authorized, in its discretion, to terminate such imprisonment when the rules and requirements of the reformatory have been faithfully observed. *This discretion of the board is not subject to the supervision or control of the courts. It resembles that usually exercised by a board of pardons, or by the Governor of this state under the authority committed to him by the Constitution to grant reprieves, commutations of sentences, and pardons.* The law confers upon the person imprisoned in the reformatory no absolute right of discharge under any circumstances until the maximum term of imprisonment prescribed as the punishment for the crime of which such inmate has been adjudged guilty has expired." (Emphasis added.)

We do not entirely agree with the State's position. It is true that there is no right to an appeal, in the usual sense, from the decision of the Parole Board, but Due Process requires that judicial review be available to insure that the requirements of Due Process have been met and that the Parole Board has acted within the scope of its powers. *Cf. Warren v. Indiana Telephone Co.,* (1939) 217 Ind. 93, 105, 26 N.E.2d 399. We emphasize that the courts of this state can not act as a "Super-Parole Board."

## LAW

The primary question involved in this case is whether the requirement of procedural due process applies to parole release determinations, and if so, the procedure that due process requires.

It has long been the law in Indiana that the Parole Board has almost absolute discretion in carrying out its duties and that it is not subject to the supervision or control of the Courts. *Hawkins v. Jenkins, supra; Dowd v. Basham,* (1954) 233 Ind. 207, 116 N.E.2d 632; *Terry v. Byers, supra.*

Parole release procedures were the subject of a recent decision of the United States Supreme Court in the case of *Greenholtz v. Nebraska Penal Inmates,* (1979) 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668. *Greenholtz* involved a class action by inmates claiming that they were unconstitutionally being denied parole by the Nebraska Parole Board, in that Nebraska's parole statute and the Board's procedures denied them procedural due process. In the majority opinion, authored by Chief Justice Burger and concurred in by four other Justices, the Court stated:

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence * * *.

\* \* \* \* \* \*

"A state may, as Nebraska has, establish a parole system but it has no duty to do so. Moreover, to insure that the state-created parole system serves the public interest purposes of rehabilitation and deterrence, the state may be specific or general in defining the conditions for re-

lease and the factors that should be considered by the parole authority. It is thus not surprising that there is no prescribed or defined combination of facts which, if shown, would mandate release on parole. Indeed the very institution of parole is still in an experimental stage. In parole releases, like its siblings probation release and institutional rehabilitation, few certainties exist. In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community. This latter conclusion requires the Board to assess whether, in light of the nature of the crime, the inmate's release will minimize the gravity of the offense, weaken the deterrent impact on others and undermine respect for the administration of justice. The entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." *Id.* at 7, 99 S.Ct. at 2104. 2104.

Thus, the Supreme Court rejected the argument that there is a constitutional right to parole release. The Court also rejected the argument that a constitutionally protected interest is created whenever a state provides a *possibility* of parole, expressly distinguishing the case of *Morrissey v. Brewer,* (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, wherein it was held that a parole *revocation* determination must meet certain due process standards.

The Nebraska inmates argued, in the alternative, that the Nebraska statute itself creates a protectable *expectation* of parole. The Supreme Court responded:

"Since respondents elected to litigate their due process claim in federal court, we are denied the benefit of the Nebraska courts' interpretation of the scope of the interest, if any, its statute was intended to afford to inmates. See *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). *We can accept respondent's view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection. However, we emphasize that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.* We therefore turn to an examination of the statutory procedures to determine whether they provide the process that is due in these circumstances." *Id.,* 442 U.S. at 12, 99 S.Ct. at 2106. (Emphasis added.)

Thus, the Court held that an expectancy of release must emanate, if at all, from state law; and that, if such an expectancy does emanate from state law, it is entitled to "some measure" of constitutional protection. The Court's decision appears to have been dictated, at least in part, by the language in Nebraska's parole release statute to the effect that the Parole Board "shall" order an inmate's release unless the Board determines that parole should be deferred on the basis of a finding of one of four specifically enumerated exceptions. In sharp contrast to the Nebraska parole statute, the Indiana statutory scheme attempts to vest complete discretion with the Parole Board:

"11–1–1–8 [13–1608]. Seal of parole board—Decisions of board—Report to governor.—The Indiana parole board shall adopt an official seal of which the courts shall take judicial notice. Decisions may be by majority vote. There shall be no appeal from the decision in any matter concerning parole.

"The members shall keep a record of their decisions and shall notify the department of their decisions relating to the persons who have been confined. At the close of each fiscal year they shall submit to the governor a report showing the number of paroles rescinded. [Acts 1961, ch. 343, § 8, p. 1051.]"

"11–1–1–9 [13–1609]. Paroles—Procedure—Rules and regulations—Not applicable to persons imprisoned for misdemeanor.—(a) The Indiana parole board is

authorized to release on parole, pursuant to the laws of Indiana, any person confined in any penal or correctional institution in this state except persons under sentence of death. It shall conduct hearings at each correctional institution at such time as may be necessary for a full study of the cases of prisoners eligible for release on parole and to determine when and under what conditions and to whom parole may be granted. All paroles shall issue upon order of the board, duly adopted. Notwithstanding this subsection, prisoners who are sentenced under IC 35–50 [35–50–1–1—35–50–6–6] shall be released on parole in accord with IC 35–50 [35–50–1–1—35–50–6–6].

(b) Within one [1] year after his admission and at such intervals thereafter as it may determine, the Indiana parole board shall secure and consider all pertinent information regarding each prisoner, except prisoners under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examinations as have been made.

(c) Before ordering the parole of any prisoner, the Indiana parole board shall have the prisoner appear before it, and shall interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment, or for his maintenance and care, and only when the Indiana parole board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Notwithstanding this subsection, prisoners who are sentenced under IC 35–50 [35–50–1–1—35–50–6–6] shall be released on parole in accord with IC 35–50.

(d) Every prisoner while on parole shall remain in the legal custody of the warden or superintendent of the institution from which he was paroled but shall be subject to the orders of the Indiana parole board.

(e) The Indiana parole board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the conduct of parole hearings or conditions to be imposed upon parolees. Whenever an order for parole is issued it shall recite the conditions thereof.

(f) This chapter does not apply to persons committed to imprisonment for commission of a misdemeanor. Such persons shall be discharged by the state agency having their custody, according to law. [Acts 1961, ch. 343, § 9, p. 1051; 1978, P.L. 2, § 1101, p. 2.]"

"11–1–1–9.1. Eligibility of felons for parole.—(a) Every prisoner sentenced upon conviction of a felony to an indeterminate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of his minimum term. Every prisoner sentenced upon conviction of a felony to a determinate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of one half [½] of his determinate term or at the expiration of twenty [20] years, whichever comes first. This subsection does not apply to a person who is sentenced under IC 35–50 [35–50–1–1—35–50–6–6].

(b) Notwithstanding any other provision of this chapter, a person imprisoned for a felony under IC 35–50 [35–50–1–1—35–50–6–6] shall be released on parole in accord with IC 35–50 [35–50–1–1—35–50–6–6]. [IC 11–1–1–9.1, as added by Acts 1974, P.L. 43 § 2, p. 181; 1977, P.L. 340, § 147, p. 1533.]"

Our parole release statute creates no expectancy of release as envisioned in the Nebraska statutory scheme; rather, our Legislature has invested the Parole Board with almost total discretion in such matters. Having no constitutional or inherent right to parole release, if an inmate in this State has any rights with regards to such release, they must emanate from the parole release statute itself. In this light, we will examine the particular issues raised by Murphy in the case at hand.

## ISSUE I

■ The first issue raised by Murphy is whether the Parole Board violated his due process rights by failing to give adequate and sufficient reasons for the denial of parole. Specifically, he contends that the Board, in merely stating that parole was denied because of the "seriousness of the offense," failed to give any factual reasons for the denial, failed to give Murphy any indication of what he should do to make himself a more likely candidate for parole, and overlooked the positive aspects of his record. In support of his argument, he cites several pre-*Greenholtz* cases which held that the reason given for denial must be sufficiently specific so as to allow meaningful judicial review. However, those cases were decided under the erroneous assumption that the due process clause is applicable to parole *release* in the same manner as it is applicable to parole *revocation*. The United States Supreme Court held in *Greenholtz* that an inmate's parole release rights, if any exist, must have their origins within the parole release law of that state. Our Legislature has delegated to the Parole Board the responsibility of determining the conditions of early release, without further specification. We conclude that, when the Parole Board advised Murphy that they were denying early release because of the "seriousness of his offense," they correctly stated their reason for the denial. Such advisement met the requirement of procedural due process said to be owing in *Young v. Duckworth, supra.*

## ISSUE II

■ Murphy's next contention is that the Parole Board violated his due process rights by failing to allow him access to information contained in his institutional file. However, he does not state, nor does the record reflect, that he ever *requested* access to this information. Nor does the record reveal what the Parole Board's policy is with respect to such inmate access, but we can perceive bona fide reasons for denying penal institution inmates such access. Due process permits a weighing of the state's interests of security and inmate management against the interest of the inmate hoping for parole release.

## ISSUE III

■ Murphy contends that Ind.Code § 11–1–1–9 (Burns Supp.1978) is unconstitutional in that it fails to give the Parole Board reasonable and adequate guidelines for reaching its parole release determinations. This contention is without merit. Again, quoting from the *Greenholtz* case, the United States Supreme Court, stated that a state's parole release statute may be "specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Id.* at 8, 99 S.Ct. at 2104. Furthermore, the Court stated:

"Here, as we noted previously, the Parole Board's decision as defined by Nebraska's statute is necessarily subjective in part and predictive in part. Like most parole statutes, it vests very broad discretion in the Board. No ideal, error-free way to make parole release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of the actual parole decisionmakers in predicting future behavior. Our system of federalism encourages this state experimentation. If parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." *Id.* at 13, 99 S.Ct. at 2107.

## ISSUE IV

■ Murphy contends that the Parole Board's denial of parole because of the "seriousness of the offense" violates the Eighth Amendment prohibition against cruel and unusual punishment, the double jeopardy provisions of the Fifth Amendment and Section 14 of Article I of the Indiana Constitution, the proscription against vindictive justice of Article I, Section 18 of the Indiana Constitution, as well as the general

concept of indeterminate sentencing. In *Greenholtz,* the United States Supreme Court stated that the parole determination must necessarily include, *inter alia,* consideration of the gravity of the offense. *Id.* at 8, 15, 99 S.Ct. 2100. We agree and note that Murphy has cited no authority to the contrary.

## ISSUE V

■ Murphy contends that the Board did not consider all of the pertinent information concerning him prior to reaching their decision. In essence, it is his argument that the Board did not consider all of the data in his institutional file because, if they had, they would have granted parole. This amounts to a plea for an appeal from a negative verdict, which clearly could not be required. To repeat a portion of our earlier quote from *Greenholtz v. Nebraska Penal Inmates, supra,* "The entire inquiry is, in a sense, an 'equity' type judgment that cannot always be articulated in traditional findings." Elsewhere, therein, it was written, "The decision turns on a 'discretionary assessment of a multiplicity of inponderables, entailing primarily what a man is and what he may become rather than simply what he has done.'" Accordingly, there being no standards established with respect to the factors that the Board may consider, it could never be said that they were without conflict and lead unerringly to a conclusion different than the one reached.

Additionally, it must be noted that the Nebraska statute created an expectancy of release, requiring release "unless it (the Board) is of the opinion that his release should be deferred because: * * *," listing four reasons justifying denial. Our statute, however, expressly provides that "A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon."

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.