Sarah Isabel WHITE, Appellant–Plaintiff,

v.

INDIANA PAROLE BOARD, Raymond J. Justak, Kermit O. Borrous, Patricia A. Ravinet, Thor R. Miller, and Thomas Jeffers, Appellees–Defendants.

No. 49A04–9806–CV–305.

Court of Appeals of Indiana.

June 24, 1999.

Rehearing Denied Aug. 23, 1999.

Charles A. Asher, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Sarah White appeals the trial court's order granting the Indiana Parole Board's motion for judgment on the pleadings raised in response to her claim that she is entitled to be considered for parole. White raises one issue which we restate as whether White was entitled to parole consideration as one serving a life sentence under the parole statutes in effect at the time of her conviction. We affirm.

The facts most favorable to the judgment follow. In December of 1974, White set a fire that resulted in the death of six people. The State charged her with six counts of felony murder of which she was found guilty in 1975. The trial court sentenced her to six concurrent life sentences. During the time of her imprisonment, the Board has refused to consider White for parole. Consequently, she filed a complaint for mandamus and declaratory judgment in 1997 alleging that she is eligible for parole consideration under Ind. Code § 11-1-1-9. The Board filed a motion for judgment on the pleadings which the trial court granted.

The sole issue is whether White, as an inmate sentenced to life imprisonment in 1975, was then entitled to parole consideration. It has long been the law in Indiana that the Parole Board has almost absolute discretion in carrying out its duties and that it is not subject to the supervision or control of the Courts. *Murphy v. Indiana Parole Bd.*, 272 Ind. 200, 397 N.E.2d 259, 261 (Ind. 1979). Indeed, there is no constitutional or inherent right to parole release. *Id.* Thus, our review of a decision from the Parole Board is limited to a determination of whether "the requirements of Due Process have been met and that the Parole Board has acted within the scope of its powers." *Id.* These powers are defined by statute. *Id.* Consequently, any right to parole release in Indiana must emanate from the parole release statutes. *Id.* at 263. Our supreme court has held:

"Suffice it to say that the legislature may abolish all paroles. If it may do such, it may also make parole more difficult or impossible in certain cases. The terms of parole are a matter of legislative policy. Statutes providing for consecutive sentences and statutes establishing conditions for parole are not 'vindictive justice' but represent the legislature's opinion of the best way to construct a reformative penal code. We are not at liberty to dispute the legislature's prerogative."

*White v. State*, 263 Ind. 302, 309, 330 N.E.2d 84, 88 (Ind.1975). Therefore, our review of whether White is entitled to parole consideration will be limited to statutory construction.

■ In construing statutes, our primary task is to determine and implement the intent of the legislature. *Indiana Dep't of State Revenue v. Ft. Wayne Nat'l Corp.,* 649 N.E.2d 109, 113 (Ind.1995), *cert. denied,* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). We give words their common and ordinary meaning without "overemphasizing a strict literal or selective reading of individual words." *Spaulding v. Int'l Bakers Serv.,* 550 N.E.2d 307, 309 (Ind.1990) (*quoting Foremost Life Ins. Co. v. Dept. of Ins.,* 274 Ind. 181, 186, 409 N.E.2d 1092, 1096 (1980)). Also, in gleaning such an intent, we presume that the legislature is mindful of court decisions and existing law. *State Employees' Appeals Comm'n v. Barclay,* 695 N.E.2d 957, 961 (Ind.Ct.App.1998), *trans. denied,* 706 N.E.2d 178. Moreover, we presume that the legislature does not enact useless provisions. *State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986). In addition, specific statutory provisions take priority over general statutory provisions. *Ezzell v. State,* 246 Ind. 268, 271, 205 N.E.2d 145, 146 (Ind.1965).

■ Although this is not a criminal appeal, the subject matter of this appeal involves a determination of whether White is eligible to be considered for parole from her criminal convictions. "One of our well established rules of criminal law is that the controlling law is that which is in effect at the time the crime is committed." *Smith v. State,* 675 N.E.2d 693, 695 (Ind.1996) (citation omitted). Therefore, the controlling statutes in this case will be those in effect at the time White committed her criminal act that resulted in the deaths of six people. *See id.*

White argues that, pursuant to I.C. § 11–1–1–9, any prisoner not sentenced to death was eligible to be considered for parole. The state responds by arguing that I.C. § 11–1–1–9.1 controlled White's eligibility for parole. However, the resolution of this issues does not depend on these two statutes alone.

Rather, the history of our parole release statutes reveals three applicable statutes existing at the time of White's conviction (I.C. §§ 11–1–1–9, 11–1–1–9.1, and 11–7–1–1) and a strong relationship between parole release and good time statutes. Consequently, we first briefly review the history of parole statutes in Indiana.[1]

The earliest enacted statute regarding parole in effect at the time of White's conviction was I.C. § 11–7–1–1 which was first enacted in 1897. I.C. § 11–7–1–1 (originally § 13–246, Acts 1897, ch. 143, § 3, p. 219) (repealed 1978). At the time of White's conviction, the statute read in relevant part:

> "At each meeting of said board held at such prison, every prisoner confined in said prison upon an *indeterminate* sentence, whose minimum term of sentence has expired, shall be given an opportunity to appear before such board and apply for his release upon parole, or for an absolute discharge, as hereinafter provided, and *said board is hereby prohibited from entertaining any other form of application or petition for the release upon parole or absolute discharge of any prisoner.*"

I.C. § 11–7–1–1 (emphasis added).[2] Thus, only inmates serving indeterminate sentences were eligible for parole. *Gilchrist v. Overlade,* 233 Ind. 569, 575, 122 N.E.2d 93, 96–97 (Ind.1954) (holding that the sole power of the parole board in Indiana "is confined to the granting of paroles, and this was granted by the legislature in order to give effect to, and assist in, the administration of the indeterminate sentence laws").

Despite being ineligible for parole, those serving determinate sentences were eligible for early release. Specifically, they were eligible for good time credits under I.C. § 11–7–6–1 which was first enacted in 1933. I.C. § 11–7–6–1 (originally § 13–116, Acts 1933, ch. 164, § 1, p. 858) (repealed 1974, current version at § 35–50–6). Moreover, until 1955, only those serving determinate

1. While reference will be made to current citations for any equivalent statutes, our history ends with 1979, the year our state legislature first explicitly identified inmates serving life sentences as eligible for the possibility of parole.

2. Indeterminate sentences are those "sentence[s] of imprisonment the duration of which is not fixed by the court but is left to the determination of penal authorities within minimum and maximum time limits fixed by the court of law." BLACK'S LAW DICTIONARY 771 (6th ed.1990).

sentences were eligible for good time credits that could be applied toward their discharge date.[3] *Dunn v. Jenkins*, 268 Ind. 478, 487, 377 N.E.2d 868, 874 (Ind.1978); *Jones v. State.*, 267 Ind. 619, 621, 372 N.E.2d 1163, 1164 (1978); *Hinkle v. Dowd*, 223 Ind. 91, 94, 58 N.E.2d 342, 343 (Ind.1944). Thus, those serving indeterminate sentences would be eligible for parole consideration and those serving determinate sentences would be eligible for an early discharge dependent upon their good time credit.[4] *See Dotson v. State*, 258 Ind. 581, 585, 282 N.E.2d 812, 815 (Ind.1972).

In 1953, the state legislature complemented the still existing § 11–7–1–1 by charging the board of parole "with the duty, in the manner provided by law, of determining what prisoners serving an indeterminate sentence may be released on parole and when and under what conditions." I.C. § 13–1529 (Acts 1953, ch. 266, §§ 28–39, p. 944) (repealed 1961, Acts 1961, ch. 343, § 43). That same year, the state legislature also enacted a statute which provided good time credit toward parole for those serving indeterminate sentences. I.C. § 11–7–7–1 (Burns 1973) (originally I.C. § 13–119a, Acts 1955, ch. 160, § 1, p. 311) (repealed 1974, Acts 1974, P.L. 43, § 3, current version at § 35–50–6); *Dotson v. State*, 258 Ind. at 585 282 N.E.2d at 815.[5] The statute read:

"Every inmate who is now or hereafter may be confined in the Indiana State Prison, the Indiana Reformatory, or the Indiana Women's Prison for an indeterminate term of imprisonment, and who, while an inmate in such institution, shall have no infraction of the rules and regulations of the institution, nor infraction of the laws of the state of Indiana or laws of the United States recorded against him or her, and who performs in a faithful manner the duties assigned to him or her while an inmate, shall be entitled to the same rate

of good time *diminution of time served prior to parole eligibility* as already provided by law for diminution of sentence for inmates serving determinate sentences.... In the case of an indeterminate sentence inmate, said reduction shall be computed upon the minimum term of such sentence only.

For purpose of parole eligibility the minimum term of sentence shall be construed as the minimum term imposed by the court, less any good-time diminution granted under terms of this act: Provided, however, That no inmate shall be paroled on his minimum term until he or she has served at least one [1] year."

I.C. § 11–7–7–1 (emphasis added). Thus, inmates serving either a determinate or an indeterminate sentence were eligible to earn good time while only those serving indeterminate sentences were eligible for parole. *Id.; Taylor v. State*, 251 Ind. 236, 243, 236 N.E.2d 825, 829 (Ind.1968). However, those inmates serving life sentences were neither eligible for parole nor good time credit. A life sentence was considered not to be a determinate or indeterminate sentence. *Jones*, 372 N.E.2d at 1164 (citing *Brown v. State*, 262 Ind. 629, 322 N.E.2d 708, 711 (Ind.1975)). Because the good time and parole eligibility statutes specified their applicability to those sentences classified as determinate and indeterminate, a prisoner serving a life sentence was not eligible to earn good time or be paroled.

In 1961, the state legislature enacted what became I.C. § 11–1–1–9. The statute read in relevant part:

**"Parole; hearings; investigations**

The Indiana parole board is hereby authorized to release on parole, pursuant to the laws of the state of Indiana, any person confined in any penal or correctional insti-

---

**3.** "A determinate sentence has been defined as one for a definite or certain number of years fixed by a court." *Jones v. Jenkins*, 267 Ind. 619, 372 N.E.2d 1163, 1164 (1978). Also, a life sentence is neither determinate nor indeterminate. *Id.* (citing *Brown v. State*, 262 Ind. 629, 322 N.E.2d 708, 711 (Ind.1975)).

**4.** We acknowledge that some of the Indiana cases use the term parole to refer to obtaining

parole as well as being discharged due to good time credit. *See Taylor v. State*, 236 N.E.2d 825, 829, 251 Ind. 236, 244 (Ind.1968). However, we use the term here to refer to being released earlier than the end of one's sentence by the parole board.

**5.** For the time between the statute's repeal and its current version, see I.C. § 11–7–6.1–1.

tution in this state except persons under sentence of death. It shall conduct hearings at each correctional institution at such time as may be necessary for a full study of the cases of prisoners *eligible* for release on parole and to determine when and under what conditions and to whom parole shall be granted. All paroles shall issue upon order of the board, duly adopted. Within one (1) year after his admission and at such intervals thereafter as it may determine, the Indiana parole board shall secure and consider all pertinent information regarding each prisoner, except prisoners under sentence of death, . . . .

\* \* \* \* \*

The Indiana parole board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the eligibility of prisoners for parole, . . . ."

I.C. § 11–1–1–9 (originally I.C. § 13–1609, Acts 1961, ch. 343, § 9, p. 1051) (repealed 1980, Acts 1979, P.L. 120, § 22). Although I.C. § 11–1–1–9 by its terms appears all inclusive, we conclude that its language authorizing the parole board "to release on parole . . . any person confined in any penal or correctional institution in this state except persons under sentence of death" to be a broad grant of authority circumscribed by I.C. § 11–7–1–1. For, although the legislature repealed §§ 13–1528—13–1546 with Acts 1961, ch. 343, it noticeably left I.C. § 11–7–1–1 intact. I.C. § 11–7–1–1 (Burns 1973); *Feggins v. State*, 265 Ind. 674, 684, 359 N.E.2d 517, 523 (Ind.1977) (citing I.C. § 11–7–1–1 (Burns 1973) as our parole statute).

In 1974, the state legislature enacted I.C. § 11–1–1–9.1 which read:

"11–1–1–9.1   Eligibility for parole

Every prisoner sentenced upon conviction of a felony to an indeterminate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of his minimum term. Every prisoner sentenced upon conviction of a felony to a determinate term of imprisonment in a correctional institution shall be eligible for release on parole upon completion of one-half (½) of his determinate term or at the expiration of twenty (20) years, whichever comes first."

I.C. § 11–1–1–9.1 (Burns 1980 Supp.) (Acts 1974, P.L. 43, § 2) (repealed 1980, Acts 1979, P.L. 120, § 22, current version at § 11–13–3–2). Under the statute, those inmates serving determinate sentences were for the first time eligible for parole.[6] *Id.; Romine v. State*, 431 N.E.2d 780, 783 (Ind.1982). Consequently, it became the more specific statute delineating parole eligibility by encompassing both those inmates serving determinate and those serving indeterminate sentences. Therefore, it became the controlling statute. *See Ezzell*, 246 Ind. at 271, 205 N.E.2d at 146 (holding that specific statutory provisions take priority over general statutory provisions). However, as a life sentence is neither determinate nor indeterminate, I.C. § 11–1–1–9.1 did not provide parole eligibility for those serving life sentences. *Boyd*, 519 N.E.2d at 542. Thus, in 1979, the legislature amended this statute to include:

"A prisoner sentenced upon conviction of first or second degree murder to a term of life imprisonment is eligible for consideration for release on parole upon completion of twenty (20) years of imprisonment. A prisoner sentenced upon conviction of a felony other than first or second degree murder to a term of life imprisonment is eligible for consideration for release on parole upon completion of fifteen (15) years of imprisonment. This subsection does not apply to a person who is sentenced under IC 13–50 [35–50–1–1—35–50–6–6], or to a person who was sentenced upon conviction for more than one felony to more than one term of life imprisonment."

(Burns 1980 Supp.) (Acts 1979, P.L. 119, § 1).

From our review of the history of the parole eligibility statutes, we first conclude

---

**6.** Under White's theory that the parole eligibility scheme was more permissive than restrictive (i.e. § 11–1–1–9 being an absolute, broad edict to the parole board), § 11–1–1–9.1 would not have been necessary. Again, we presume that the legislature did not enact a useless provision. *State ex rel. Hatcher v. Lake Superior Court*, 500 N.E.2d 737, 739 (Ind.1986).

that the statutes were more restrictive than permissive. In other words, unless the statute explicitly and specifically allowed for parole eligibility based on the nature of an inmate's sentence, the inmate was not eligible for parole. As those inmates serving life sentences were not explicitly and specifically identified as eligible for parole by statute until 1979, they were not eligible for parole prior to 1979.

Second, the state legislature did not specify within the parole eligibility statutes the point at which an individual inmate serving a particular type of sentence becomes eligible for parole consideration until that type of sentence had also obtained statutorily recognized parole eligibility. As for life sentences, the state legislature did not provide any method for determining when an inmate serving a life sentence could possibly become eligible for parole consideration until 1979, well after White's conviction and sentence. Without such direction from the state legislature, we find it difficult to see how parole could apply to those serving life sentences. When would such an inmate become eligible for parole consideration? Without such direction, we cannot presume the legislature intended to provide those inmates serving life sentences with the possibility of parole. Nor are we at liberty to dispute or infringe upon the legislature's prerogative. *See White*, 263 Ind. at 309, 330 N.E.2d at 88 (Ind.1975).

■ Third, this statutory construction is consistent with the treatment of "lifers" with respect to good time and other benefits conferred upon "non-lifers" at the time of White's conviction. *See Jennings v. State*, 270 Ind. 699, 702, 389 N.E.2d 283, 285 (Ind. 1979). Our supreme court has held:

"[T]here exists a compelling state interest sufficient to justify the disparate treatment of 'lifers' and 'non-lifers' by the Department of Corrections. We so held because the legislative intent to deny 'lifers' good time credit is rationally based upon practical experience and clearly advances the reasonable state interest of protecting the public from the extreme dangerousness of people sentenced to life imprisonment.

We also have held that a prisoner has no constitutional right to good time credit."

In addition, our supreme court has held:

"Legislative solutions must be respected if the distinctions drawn have some basis in practical experience or if some legitimate state interest is advanced. Our legislature has determined that the dangerousness of those persons sentenced to life imprisonment necessitates a different type of release program than that used with non-lifers, and this distinction is constitutional."

*Jones*, 267 Ind. at 624, 372 N.E.2d at 1166. Until 1979, there existed no statutory provision providing parole eligibility to those serving life sentences. We conclude this exclusion is consistent with the legislature's intent to deprive those serving life sentences of good time credit. Consequently, we conclude the legislature specifically intended to deprive those serving life sentences of statutory eligibility until 1979. We are not at liberty to dispute or infringe upon the legislature's prerogative. *See White*, 330 N.E.2d at 88, 263 Ind. at 309 (Ind.1975). As our supreme court held in *Jennings*, "[a]s one under a life sentence, the petitioner's ultimate release is dependent entirely upon executive clemency, which may be exercised, or withheld, at the will of the Governor." *Jennings*, 270 Ind. at 702, 389 N.E.2d at 286.

Finally, although the legislature in 1979 provided parole eligibility to those serving "a" life sentence, the legislature specifically denied the possibility of parole to anyone serving more than one life sentence. I.C. § 11–1–1–9.1. As this remains consistent with our observation that the parole eligibility statutes have progressively become less restrictive, we do not see how the statutes and legislative intent prior to 1979 could be construed so as to provide the possibility of parole to those serving any number of life sentences. Therefore, we conclude the legislature has always intended to deny the possibility of parole to inmates such as White who is currently serving six life sentences.

■ Considering the ordinary and plain meaning of the language used in I.C. § 11–1–1–9.1, we conclude that at the time of White's conviction, inmates serving life sentences were not intended by the legislature to be

included in those classes of inmates who could become eligible for parole.[7] Therefore, the trial court did not err in granting the Board's motion for judgment on the pleadings.

For the foregoing reasons, we affirm the trial court's order granting the Board's motion for judgment on the pleadings.

Affirmed.

BROOK, J. concurs.

SULLIVAN, J. dissents with separate opinion.

SULLIVAN, Judge, dissenting.

White contends upon appeal that she is entitled to parole "under the law prevailing at the time of her offense." App. Br. at 4; see also 3, 6, 8 and 15. She does not claim a right to parole consideration by virtue of any ameliorative provision of a statute passed since her conviction and sentencing in 1975. We, therefore, are not called upon to apply or reject application of the doctrine of amelioration, or its functional equivalent. Be that as it may, Smith v. State (1996) Ind., 675 N.E.2d 693, relied upon by the majority, was indeed a criminal appeal from the defendant's sentencing and clearly, therefore, the sentencing statutes in effect at the time of the commission of the offense were controlling.

This appeal is from a judgment denying White's complaint for Mandamus and Declaratory Judgment. The complaint sought a declaration that she was eligible for parole despite having been sentenced to six consecutive life sentences. To be sure, the issues are very much intertwined with the penal process but, in actuality, the issues do not relate directly to the matters of criminal conviction or sentencing. Rather, they relate to whether or not the inmate is eligible to be considered by the administrative agency, the Indiana Parole Board, for release prior to the time fixed by the sentence imposed. Murphy v. Indiana Parole Board (1979) 272 Ind. 200, 397 N.E.2d 259.

Parole is a discretionary boon by the State, granting an early release notwithstanding the terms of the sentence imposed. In fact, parole does not shorten the term of the sentence imposed. While it is an amelioration of punishment, the parolee remains in the legal custody of the parole agent and the Department of Correction until expiration of the sentence imposed. Overlade v. Wells (1955) 234 Ind. 436, 127 N.E.2d 686. Furthermore, although there is no right of appeal from a denial of parole, the matter of eligibility for parole consideration is a matter subject to resolution by the courts. See Murphy v. Indiana Parole Board, supra. My point of disagreement leads me to observe that the functional equivalent of the doctrine of amelioration may very well be applicable to matters of parole, under appropriate circumstances.[8]

My dissent, however, rests upon what I perceive to be the clear and unambiguous language of the 1961 legislation, I.C. 11–1–1–9, as it existed in 1975. That provision for parole eligibility applied to "any person confined in any penal or correctional institution in this state except persons under sentence of death." (emphasis supplied). It did not say "any person except those serving life sentences, determinate sentences or under sentence of death." Accordingly, it is my view that persons serving determinate sentences were, contrary to the holding of the majority here, eligible for parole prior to enactment of the 1974 Act.

The latter statute, I.C. 11–1–1–9.1 merely set forth the time at which a determinate or indeterminate sentence prisoner became eligible for parole. It did not purport to deter-

7. White offered no citations to cases in which an individual serving a life sentence obtained parole prior to the 1979 amendment.

8. The doctrine of amelioration provides that if the legislature has seen fit to lessen the punishment for a particular crime, a person who committed the act prior to the effective date of the diminished penalty may be entitled to the sentencing benefits of the statutory amendment.

See Lunsford v. State (1994) Ind.App., 640 N.E.2d 59. In order to gain such penal benefit, however, the statutory change must be in effect before sentencing. State v. Crocker (1979) Ind., 270 Ind. 377, 385 N.E.2d 1143. Although the doctrine ameliorates the actual sentence to be imposed, its rationale and purposes may well be applied in the parole context of eligibility for early release from physical incarceration as opposed to a lessening of the punishment itself.

mine who was eligible for parole. Furthermore, it did not purport to affect I.C. 11–1–1–9 governing which prisoners were eligible.

Similarly, the 1979 amendment which specified the time at which prisoners under a life sentence became eligible does not mean that they had previously not been eligible but rather provided the Parole Board with a statutory time frame at which that eligibility was to be acted upon. Prior to the 1979 amendment, and prior to the 1974 enactment of I.C. 11–1–1–9.1, persons under determinate and indeterminate sentences, were not excluded from the "any person" provision of I.C. 11–1–1–9. That the precise methodology and time factors governing the Parole Board in their activities were not in place by enactment of the General Assembly, does not warrant a conclusion that I.C. 11–1–1–9 was totally meaningless and without effect. That statute, itself, contained authorization for the Parole Board to adopt rules and regulations for exercising its parole authority. That the Board did not do so, or did not do so with the specificity set forth by the legislature in I.C. 11–1–1–9.1, should not be interpreted as some indication of legislative intent that persons under life sentences be excluded from parole consideration; nor is it an invitation for us to retroactively repeal I.C. 11–1–1–9.

I would reverse and remand for further proceedings not inconsistent with the views expressed herein.