

**FILED**

Dec 05 2018, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Penman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Michael Barber, | December 5, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-308 |
| v. | Appeal from the Monroe Circuit Court |
| State of Indiana, | The Honorable Marc R. Kellams, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 53C02-1208-FC-788 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Kevin Barber (Barber), appeals from the trial court's denial of his motion to modify his sentence.

We affirm.

# ISSUE

Barber presents one issue on appeal, which we restate as: Whether the trial court abused its discretion when it denied his motion to modify his sentence.

# FACTS AND PROCEDURAL HISTORY

On August 24, 2012, the State filed an Information, charging Barber with child molesting, a Class C felony; performing sexual conduct in the presence of a minor, a Class D felony; and dissemination of matter harmful to minors, a Class D felony. On December 12, 2012, Barber pleaded guilty pursuant to a plea agreement which provided for an eight-year sentence on the child molesting offense and two-year sentences for each of the Class D felonies. Both Class D felony sentences were entirely suspended to probation and were to be served concurrently to one another but consecutively to the eight-year sentence for the child molesting offense. The trial court accepted Barber's guilty plea and sentenced him according to the terms of his plea agreement.[1]

---

[1] Barber challenged his sentence and guilty plea in a variety of litigation, including a motion to correct erroneous sentence. We affirmed the trial court's denial of Barber's motion to correct erroneous sentence and, by separate order, dismissed his challenge to the appropriateness of his sentence. *Barber v. State*, No. 53A01-1310-CR-464, Slip op. at 4 (Ind. Ct. App. June 10, 2014).

On November 22, 2015, with presentencing and good-time credit, Barber completed the executed portion of his sentence. He then began serving his parole for the child molesting offense and his probation for the Class D felonies. On October 4, 2017, Barber moved the trial court to modify his sentence. On November 8, 2017, the trial court held the first of two hearings on Barber's motion. Barber explained at the hearing that he sought to have his sentence for Class C child molesting reduced or suspended so that he could be discharged from parole, which he found to be overly restrictive on his ability to travel to attend school. The Deputy Prosecutor discussed various possibilities regarding restructuring Barber's sentence, but he stated that, "I would at this point not want to, to reduce his sentence in any way." (Appellant's App. Vol. II, p. 207). The trial court expressed doubt that it could grant Barber the relief he sought even if it were inclined to do so, as Barber had already completed the executed portion of his sentence. Barber, who was about to be discharged from his probation for the Class D felonies, agreed to extend the period of his probation to allow the trial court additional time to research the issue.

On December 1, 2017, Barber filed a brief in support of his motion for sentence modification. Barber claimed that he had two years, four months, and twenty-seven days remaining on his parole for the child molesting offense. Barber argued that the terms of his sentence had placed an "unnecessary burden" on his re-entry into society. (Appellant's App. Vol. II, p. 219). On December 6,

2017, the trial court held a second hearing on Barber's motion at which the parties presented additional argument but no evidence. On January 16, 2018, the trial court summarily denied Barber's motion to modify his sentence.

[7] Barber now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[8] As a matter of first impression, we must determine whether the sentence modification statute authorizes a trial court to modify a sentence after the defendant has completed the executed portion of the sentence and has been discharged to parole. We review a trial court's denial of a request to modify sentence for an abuse of discretion. *Gardiner v. State*, 928 N.E.2d 194, 196 (Ind. 2010). However, we review questions of law such as the interpretation of the sentencing modification statute *de novo*. *Id*.

[9] "When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction." *State v. Prater*, 922 N.E.2d 746, 748 (Ind. Ct. App. 2010), *trans. denied*. "We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Id*. When the language of a statute is clear and unambiguous, we give effect to its plain and ordinary meaning. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). Our goal in construing a statute is to discern the legislature's intent. *Id*.

After entering its sentence, the trial court generally retains only the jurisdiction over a convicted person allotted to it by statute. *State v. Harper*, 8 N.E.3d 694, 696 (Ind. 2014). Therefore, we must examine the sentencing modification statute to discern whether it provides jurisdiction for a trial court to modify the sentence of a parolee. Indiana Code section 35-38-1-17 (2016)[2] provides in relevant part as follows:

> (e) At any time after:
>
>> (1) a convicted person begins serving the person's sentence; and
>>
>> (2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;
>
> the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing.

Neither party argues that the statute is ambiguous, and we do not find it to be so. Our examination of the express language of the statute leads us to conclude that the sentence modification statute is available only to convicted persons who are, at the time of the filing of their petition, currently executing a

---

[2] This was the version of the statute in effect at the time Barber filed his petition on October 14, 2017, which is the relevant date for determining what version of the statute applies. *State v. Lamaster*, 84 N.E.3d 630, 634 (Ind. Ct. App. 2017). The statute has been subsequently modified in a manner that does not affect the resolution of this appeal.

sentence. The best evidence for this conclusion is that the express language of the statute does not provide for such relief. Barber argues that the trial court had the authority to grant relief to a parolee because "the sentence modification statute makes no mention of parole." (Appellant's Br. p. 5). He contends that this is proof that the legislature did not intend to discriminate against parolees. However, when we interpret a statute, we will not read into the statute that which is not the expressed intent of the legislature, and it is just as important to recognize what the statute does not say as to recognize what it does say. *Thompson v. State*, 5 N.E.3d 383, 388 (Ind. Ct. App. 2014). Absent an express grant of authority by the legislature, we will not read into the sentence modification statute terms which would result in such a great expansion of the trial court's jurisdiction to modify sentences. *See Paquette v. State*, 101 N.E.3d 234, 241 (Ind. 2018) ("We may not add new words to a statute which are not the expressed intent of the legislature.") (quotation omitted).

[11]     We find additional support for our conclusion in subsection (e), which provides conditions predicate to the trial court's ability to modify a sentence: the convicted person is to have begun serving his sentence, and the trial court is to have obtained a report from the department of correction. The legislature's directive that the trial court obtain a report from the department of correction concerning the defendant's conduct while imprisoned indicates that the statute is only for the benefit of those currently executing sentences. When construing a statute, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *Prater*, 922 N.E.2d at 750. If the legislature had

intended to expand the possibility of sentence modification to those who had already completed the executed portion of their sentences and had been discharged to parole, it could have directed trial courts to obtain information more pertinent to that inquiry, such as a report from the defendant's parole officer, but it did not.

[12] Subsection (f) further supports our conclusion, providing as follows:

> (f) If the court sets a hearing on a petition under this section, the court must give notice to the prosecuting attorney and the prosecuting attorney must give notice to the victim (as defined in IC 35-31.5-2-348) of the crime for which the convicted person *is serving the sentence*.

(emphasis added). The addition of the phrase "is serving the sentence" in this subsection, styled in the progressive, continuous tense, implies an ongoing action, namely that of serving the sentence. Again, we assume that the legislature chose its words with intent. *Prater*, 922 N.E.2d at 750. Had our General Assembly intended to expand the sentence modification statute to those who had already executed their sentences, it could have used the phrase "is serving or has served the sentence", but it did not.

[13] In addition to examining the express language of the statute, when construing a statute, we also consider the practical effects of any particular statutory interpretation. *State v. Eichorst*, 957 N.E.2d 1010, 1012 (Ind. Ct. App. 2011), *trans. denied*. Here, if we were to accept Barber's proposition that the statute authorizes the relief he seeks, it would result in convicted persons receiving the

benefit of credit-time days to shorten the executed portion of their sentences which they would not have been entitled to after their sentences were reduced. For example, in this case Barber received the benefit of four years of good-time credit on his original eight-year sentence. If his sentence had been reduced to six years, he would have only been eligible for three years of good-time credit, resulting in a one-year windfall of credit-time. There is no indication that the legislature intended such a result.

[14] In addition, we agree with the State that Barber's reading of the statute would allow trial courts to interfere with the jurisdiction of our state's Parole Board, which "is not subject to the supervision or control of the Courts." *White v. Ind. Parole Bd.*, 713 N.E.2d 327, 328 (Ind. Ct. App. 1999). As a consequence, any right to parole release in Indiana must emanate from the parole release statutes. *Id*. Having resolved this appeal on jurisdictional grounds, we do not address the other issues raised by Barber on appeal, and we find no abuse of the trial court's discretion in denying his motion to modify his sentence.

## CONCLUSION

[15] Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Barber's motion to modify his already-executed sentence.

[16] Affirmed.

[17] Vaidik, C. J. and Kirsch, J. concur