Attorneys for Appellant
Gregory F. Zoeller
Attorney General of Indiana

David A. Arthur
Deputy Attorney General
Indianapolis, Indiana

Attorney for Appellee
Mark Small
Indianapolis, Indiana



FILED
Jul 30 2009, 2:11 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 45S00-0806-CR-377

STATE OF INDIANA,

*Appellant/Cross-Appellee*
*(Respondent below)*,

v.

STEVE HERNANDEZ,

*Appellee/Cross-Appellant*
*(Petitioner below)*.

Appeal from the Lake Superior Court, No. 49G02-7505-CR-111
The Honorable Clarence D. Murray, Judge
The Honorable T. Edward Page, Temporary Judge

On Direct Appeal

**July 30, 2009**

**Sullivan, Justice.**

Steve Hernandez and the State both appeal determinations made by the trial court with respect to Hernandez's petition for post-conviction relief regarding convictions and sentences for two murders committed in 1975. Because these crimes were committed prior to the 1977 effec-

tive date of our state's current criminal sentencing code, resolution of the issues in this case requires the application of certain principles and terminology infrequently used today. On the most consequential of these, we hold that Indiana law in effect at the time of Hernandez's crimes dictated that he was not eligible to be considered for parole absent executive clemency.

## Background

In 1975, when he was 19 years old, Hernandez and several older men robbed a married couple, Ivan Trajkovich and Lillian Trajkovich. In the course of the robbery, both Ivan and Lillian were killed. Hernandez and his co-defendants were tried together; the jury found Hernandez guilty of two counts each of what the law then called "murder in the perpetration of a robbery" and "murder in the first degree." Under the law then in effect, the trial court sentenced Hernandez to two terms of life in prison. On appeal, this Court affirmed the sentence. Gutierrez v. State, 270 Ind. 639, 388 N.E.2d 520 (1979). Collateral relief was subsequently denied as well. See Hernandez v. State, No. 45A03-9306-PC-197 (Ind. Ct. App. July 13, 1994), trans. denied.

In 2006, the Court of Appeals granted Hernandez authority to file a successive petition for post-conviction relief. Ind. Post-Conviction Rule 1(12). The petition alleged that the trial court had sentenced him to only one, not two, terms of life in prison; that the reason his sentence was being treated as two life sentences rather than one was due to confusion of [Hernandez's] case with the cases of [his] co-defendants." (Appellant's App. 19.) The post-conviction court denied the petition and Hernandez appealed. In 2007, while the appeal was pending before the Court of Appeals, Hernandez requested that he be allowed to return to the post-conviction court with a new claim. The Court of Appeals dismissed the appeal without prejudice, granted Hernandez authority to amend his successive petition for post-conviction relief, and remanded the matter to the post-conviction court for further consideration.

This new claim was that the Parole Board, by applying a 1979 statute (certain language in Ind. Code § 11-13-3-2(b)(3) (Supp. 1979)) to his 1975 convictions, had denied him consideration for parole in violation of the Ex Post Facto Clauses of both the Indiana and United States Consti-

tutions.  The post-conviction court held that I.C. § 11-13-3-2(b)(3) was unconstitutional as applied to Hernandez.

The State appealed this determination which, because it declared a statute unconstitutional, constituted a direct appeal to this Court pursuant to Ind. Appellate Rule 4(A)(1)(b).  Hernandez cross-appealed the post-conviction court's denial of his original claim filed in 2006.

## Discussion

### I

Hernandez's original claim for post-conviction relief, filed in 2006, was that the trial court had sentenced him to only one, not two, terms of life in prison.  The record indicates that he was originally charged with two counts under one cause number with the murder and robbery of Ivan Trajkovich and with two counts under a second cause number with the murder and robbery of Lillian Trajkovich.  As noted supra, the jury found Hernandez guilty on all four counts.  The record suggests that in each of the two causes, the trial court intended to impose a life sentence on the murder count and "withh[o]ld sentence" on the other count.  (Appellant's App. 15.)  However, it appears that the trial court recited the counts in the wrong order in one of the causes such that the "withheld sentence" applied to one of the murder counts.  Hernandez contends that this creates an ambiguity in the sentence that must be resolved against the penalty.  Hernandez also contends that "the sentence violated [his] right to trial by jury as secured both by the Sixth Amendment to the Constitution of the United States, and Article 1, § 13(a) of the Indiana Constitution."  (Appellee's Br. 31.)

Post-conviction proceedings provide defendants with the opportunity to raise issues that either were not available on direct appeal or were not known at the time of the original trial. Trueblood v. State, 715 N.E.2d 1242, 1248 (Ind. 1999).  "It has long been held that claims available on direct appeal but not presented are not available for post-conviction review."  Bunch v. State, 778 N.E.2d 1285, 1289 (Ind. 2002).  Thus, not all issues are available in a post-conviction

3

proceeding; challenges to convictions must be based on grounds enumerated in the post-conviction rules. P–C.R. 1(1); Trueblood, 715 N.E.2d at 1248.

In the present case, though Hernandez raised several issues on direct appeal, he never asserted that his sentence was improper. See Gutierrez, 270 Ind. 639, 388 N.E.2d 520. The sentencing issue was clearly available on direct appeal, but Hernandez attempts to raise this issue more than 30 years after he was convicted and sentenced. We conclude that by failing to present this claim on direct appeal, Hernandez is foreclosed from raising this claim in the post-conviction proceeding.

Hernandez also presents a fundamental error argument to support his claim of sentencing error, but it too fails. A petitioner for post-conviction relief cannot avoid the application of the waiver doctrine by arguing that it does not apply because the challenge raises fundamental error. See Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997) (stating that the availability of fundamental error as an exception to the waiver rule is limited in post-conviction proceedings). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002). Hernandez does not allege either. Consequently, there is no basis for the fundamental error exception to apply in this case. The post-conviction court is affirmed.

**II**

The record suggests that during Hernandez's lengthy incarceration, he has acknowledged his responsibility for the crimes and worked hard to improve himself, earning two associate degrees and a bachelor's degree. During post-conviction proceedings, Hernandez told the court,

> I'm just sorry to have been a part of it at all. But I accept responsibility for my actions, and just hope one day to go home. Because I believe in this country and the philosophy that everybody deserves a second chance. I think I've earned it, Your Honor. I know it's is not a matter of law, but I think I've earned it.

(Appellant's App. 29-30.) Despite this record, he has not been considered for parole.

Under Indiana law in effect at the time of Hernandez's crimes, the Indiana Parole Board had the authority "to release on parole, pursuant to the laws of the state of Indiana, any person confined to any penal or correctional institution in this state except persons under sentence of death." I.C. § 11-1-1-9 (1971). Hernandez claims that he is eligible to be considered for parole under this statute. Further, he contends that the Parole Board has read the third sentence of I.C. § 11-13-3-2(b)(3) to deny him such consideration. That language reads, "A person sentenced upon conviction of more than one (1) felony to more than one (1) term of life imprisonment is not eligible for consideration for release on parole." Id.

Hernandez maintains that it is improper for the Parole Board to find him ineligible for parole consideration by relying on the relevant language in I.C. § 11-13-3-2(b)(3) because that language was not enacted by the Legislature until 1979. He argues that applying the statute's prohibition to him, when his crimes were committed prior to its effective date, violates the Ex Post Facto provisions of the United States and Indiana Constitutions. As noted supra, the post-conviction court agreed and declared the relevant language in I.C. § 11-13-3-2(b)(3) unconstitutional as applied to Hernandez's case.

Two points need to be made about this. First, Hernandez is correct that the relevant language in I.C. § 11-13-3-2(b)(3) was adopted for the first time in 1979. 1979 Ind. Acts 550, Pub. L. No. 120, § 6. Second, however, the constitutional provisions are only implicated if Hernandez is also correct that he was otherwise eligible to be considered for parole but for the enactment of the relevant language in I.C. § 11-13-3-2(b)(3). We hold that he was not; thus, we do not reach the Ex Post Facto Clause issue.

**A**

The threshold issue in this case, whether a person sentenced to life in prison in 1975 is eligible to be considered for parole, was the issue before the Court of Appeals in White v. Ind. Parole Bd., 713 N.E.2d 327 (Ind. Ct. App. 1999), trans. denied. The focus in that case, as it is

5

here, was on the proper interpretation of the language in I.C. § 11-1-1-9 set forth supra: the Parole Board's authority "to release on parole, pursuant to the laws of the state of Indiana, any person confined in any penal or correctional institution in this state except persons under sentence of death."

Taking the position that Hernandez does here, Judge Sullivan wrote in White that this "clear and unambiguous language" applied to all prisoners except those sentenced to death. 713 N.E.2d at 333 (Sullivan, J., dissenting). Because the language did not create an exception for those serving life sentences, he believed that persons serving life sentences were eligible for parole consideration. Id.

The White majority, however, was of a different view. Chief Judge Sharpnack and Judge Brook took the position that the language in I.C. § 11-1-1-9 discussed by Judge Sullivan was "a broad grant of authority circumscribed by" other statutory language. Id. at 331. Relevant to Hernandez's situation, the White majority first pointed out that the language of I.C. § 11-1-1-9 also mandated that the Parole Board conduct hearings on "the cases of prisoners eligible for release on parole," White, 713 N.E.2d at 331, emphasizing the word "eligible" as a limitation on those to whom the Board could grant parole. Second, the Court found such eligibility defined in I.C. § 11-1-1-9.1 (1971), amended by 1974 Ind. Acts 186, Pub. L. No. 43, § 2, which said that each prisoner sentenced "to an indeterminate term of imprisonment" was to be "eligible for release on parole upon completion of his minimum term" and each prisoner sentenced "to a determinate term" was to be "eligible for release on parole upon completion of one-half (1/2) of his determinate term or at the expiration of twenty (20) years, whichever comes first." White, 713 N.E.2d at 331. Third, the court ruled that because the Legislature "did not provide any method for determining when an inmate serving a life sentence could possibly become eligible for parole consideration . . . . we cannot presume the legislature intended to provide those inmates serving life sentences with the possibility of parole." Id. at 332.

To be sure, Judge Sullivan had a rejoinder for this analysis. He viewed I.C. § 11-1-1-9.1 as only setting a time schedule for when "a determinate or indeterminate sentence prisoner became eligible for parole," not determining who was actually eligible for parole. Id. at 333-34.

As to the absence of language concerning eligibility for persons under life sentences, he argued that this "should not be interpreted as some indication of legislative intent that persons under life sentences be excluded from parole consideration; nor is it an invitation for us to retroactively repeal I.C. 11-1-1-9." Id. at 334.

As is clear from the foregoing discussion, the statutory construction arguments on both sides of this issue are strong. But we are of the view that the White majority opinion is correct for several reasons.[1]

First, according to White, the statutory scheme was:

> more restrictive than permissive . . . . [U]nless the statute explicitly and specifically allowed for parole eligibility based on the nature of an inmate's sentence, the inmate was not eligible for parole. As those inmates serving life sentences were not explicitly and specifically identified as eligible for parole by statute until 1979, they were not eligible for parole prior to 1979.

Id. at 332. Said slightly differently, construing the statutory scheme in 1975 to provide parole eligibility to persons serving multiple life sentences would not be consistent with the fact that in 1979, the Legislature provided parole eligibility to those serving "a" life sentence, while specifically denying the possibility of parole to anyone serving more than one life sentence.

Second, White's holding that persons serving life sentences were not eligible to be considered for parole is consistent with decisions of this Court that persons serving life sentences were not eligible for good time credit. Under a statute enacted in 1933, the Legislature provided "good time" credits to decrease the term of incarceration of persons serving "determinate" sentences. 1933 Ind. Acts 858, Pub. L. No. 164, § 1 (codified at I.C. § 11-7-6-1 (1971)). In Jones v. Jenkins, we held that a person serving a life sentence was not eligible for good time credit under this provision because "a life sentence is neither determinate nor indeterminate." 267 Ind. 619,

---

[1] On a petition to transfer, our Court was asked to assume jurisdiction in White, but after discussion at conference, we declined, voting to deny transfer by a vote of 3-2. White v. Ind. Parole Bd., No. 49A04-9806-CV-305 (Ind. Jan. 18, 2000) (order denying transfer).

372 N.E.2d 1163, 1164 (1978) (citing Brown v. State, 262 Ind. 629, 322 N.E.2d 708, 711 (1975)).

Similarly, under a statute enacted in 1955, a provision for good time credit had been made for persons serving "indeterminate" sentences. 1955 Ind. Acts 312, Pub. L. No. 160, § 1 (codified at I.C. § 11-7-7-1 (1971)).[2] In Jennings v. State, we held that a person serving a life sentence was not eligible for good time credit under this provision, again because "a life sentence is neither determinate nor indeterminate." 270 Ind. 699, 389 N.E.2d 283, 285 (1979) (again citing Brown, 262 Ind. at 629, 322 N.E.2d at 711).

Above, we discussed that in 1974, the Legislature enacted I.C. § 11-1-1-9.1, setting parole eligibility parameters for persons sentenced to "indeterminate" and to "determinate" terms of imprisonment. The fact that this Court has held on several occasions that a life sentence is "neither determinate nor indeterminate" in the context of eligibility for good time credit leads us to the conclusion that the same rule should apply as to eligibility for consideration for parole.

We hold that under the law as it existed in 1975, a person under a life sentence was not eligible to be considered for parole.

**B**

In finding that a person under a life sentence imposed in 1975 had been eligible to be considered for parole until the enactment of the relevant language in I.C. § 11-13-3-2(b)(3), the post-conviction court relied not on White, but on this Court's subsequent opinion in Johnston v.

---

[2] In 1974, this statute (I.C. § 11-7-7-1) and the one discussed in the preceding paragraph (I.C. § 11-7-6-1) were repealed and replaced by I.C. § 11-7-6.1-2 (1971), amended by 1974 Ind. Acts 181, Pub. L. No. 43, § 1. Indiana Code § 11-7-6.1-2 provided that every person in prison for a felony was eligible for good time credit except those "under sentence of death or life imprisonment." The fact that the Legislature made an explicit exception in the good time credit statute for life sentences but did not do so in the parole statute adopted in the very same act (I.C. § 11-1-1-9.1 (1971), amended by 1974 Ind. Acts 186, Pub. L. No. 43, § 2), could be argued in support of Judge Sullivan's view in White that the Legislature intended that persons under life sentences be eligible for parole consideration. See White, 713 N.E.2d at 333-34 ("I.C. 11-1-1-9.1 . . . . did not purport to affect I.C. 11-1-1-9 governing which prisoners were eligible [for parole consideration].").

<u>Dobeski</u>, 739 N.E.2d 121 (Ind. 2000). We acknowledge that this interpretation of <u>Johnston</u> is reasonable.

<u>Johnston</u> was a highly unusual case. In 1985, a prisoner serving two life sentences for two murders committed in 1964 filed a petition for post-conviction relief. <u>Id.</u> at 122. In 1989, rather than go to trial on the post-conviction relief claim, the petitioner and the county prosecutor agreed that in return for the prisoner dismissing his petition, the prosecutor would agree to a modification of the sentence from two life sentences to an 80-year executed sentence, consisting of two consecutive sentences of 40 years each. <u>Id.</u> The post-conviction court approved the agreement. <u>Id.</u>

The <u>Johnston</u> litigation was brought in 1997 by the family of the victims, seeking to set aside the agreement between the prisoner and the prosecutor on grounds that the agreement was illegal and did not comply with Indiana law concerning sentence modification. <u>Id.</u> In the course of analyzing the propriety of the agreement, we investigated whether others under life sentences at the time were eligible for, and received, similar sentencing relief. <u>Id.</u> at 125. Inspecting the records of the Parole Board, we identified 273 prisoners serving life sentences who had had their sentences reduced to similar time periods. <u>Id.</u> Specifically, we said that because life sentences were "indeterminate," and therefore a prisoner with such a sentence was eligible for parole, it was not inappropriate for the prisoner and the county prosecutor in <u>Johnston</u> to compromise the post-conviction litigation in the manner that they did. <u>Id.</u>

It was, of course, incorrect to refer to a life sentence as "indeterminate." <u>See</u> <u>Brown</u>, 322 N.E.2d at 711 ("a life sentence is neither determinate nor indeterminate."). And, given <u>White</u> and our analysis <u>supra,</u> it is now clear that a person serving a life sentence imposed at the time of the crime committed by the prisoner in <u>Johnston</u> was not eligible for consideration for parole. To the extent that <u>Johnston</u> held that a life sentence was indeterminate and that a prisoner serving a life sentence was eligible for consideration for parole, it is overruled.

Given that, what is the explanation for the Parole Board data showing hundreds of persons under life sentences receiving parole? The answer to that question is that an intermediate

step had occurred – a step that was not discussed or disclosed in the meeting minutes of the Parole Board. Under Indiana law at the time, the Parole Board also functioned as the Indiana Clemency Commission. I.C. § 11-1-1-41 (1971). Prisoners not eligible for parole sought clemency, or reductions in their sentences, by filing petitions with the Clemency Commission. 1933 Ind. Acts 721, Pub. L. No. 117, § 4 (codified at I.C. § 11-7-4-2 (1971)). When the Clemency Commission considered such petitions to be meritorious, the Commission forwarded them to the Governor, who had the authority to grant or deny them. Id.

In the case before us today, the State has provided us with records showing that during the period in question, the members of the Parole Board – but sitting as the Clemency Commission – regularly recommended to the Governor the requests of persons under life sentences for reductions in their sentences from life to a term of years.[3] And the Governor regularly approved the Clemency Commission's recommendation. No longer being under a life sentence, these prisoners had become eligible for parole and the Parole Board granted it.[4]

---

[3] It would have been helpful if the State had provided us with this analysis and these materials on rehearing in Johnston, but the State filed no petition for rehearing. Donald W. Pagos, the attorney for the family that filed the Johnston case, did file a petition for rehearing on these grounds and in retrospect, although it would not have changed the outcome, we should have been more attentive to his argument. Johnston v. Dobeski, No. 64S04-9902-PC-140 (Ind. Feb. 1, 2001) (order denying rehearing).

[4] The following examples, one from each of the four Indiana governors serving during the 1962-1973 time period, are illustrative of the procedure that approximately 275 prisoners serving life sentences followed in receiving parole during the 1962-1973 time period:

1. Robert J. Loftus was sentenced to life in prison on March 16, 1945, for second degree murder in St. Joseph County. The Clemency Commission met on November 29, 1962, and voted to recommend that the Governor commute his sentence to 18 years to life. On December 15, 1962, Governor Welsh signed the Clemency Commission's recommendation. On January 10, 1963, the Parole Board granted parole, effective March 16, 1963.

2. Michael Kelly was sentenced to life in prison on March 19, 1951, for murder and robbery in Hancock County. The Clemency Commission met on April 29, 1965, and voted to recommend that the Governor commute his sentence to 14 years, 6 months to life. On May 8, 1965, Governor Branigin signed the Clemency Commission's recommendation. On July 2, 1965, the Parole Board granted parole, effective September 20, 1965.

3. Frank Hamilton was sentenced to life in prison on August 3, 1948, for kidnapping in Dearborn County. The Clemency Commission met on April 29, 1970, and voted to recommend that the Governor commute his sentence to 22 years to life. On June 10, 1970, Governor Whitcomb signed the Clemency Commission's recommendation. On July 6, 1970, the Parole Board granted parole, effective August 3, 1970.

This intervening step of executive clemency, which was not apparent to us when we decided <u>Johnston</u>, does not affect our attitude about the outcome of <u>Johnston</u>. The reason for examining the Parole Board records in the first place was to see whether life sentences imposed at the time were done so under a "sentencing regime that expressly provided for later review" and whether the sentence to which the prisoner and county prosecutor agreed exceeded the periods of time with respect to which the "sentencing system regularly authorized parole from life sentences." <u>Johnston</u>, 739 N.E.2d at 125. The fact that there was an intervening step in the sentencing regime of which we were not aware, does not change the broader conclusion that the statutes in effect at the time could have operated to provide that the prisoner's original sentence would be modified to one equal to that provided in his agreement with the prosecutor. We therefore reaffirm our holding in <u>Johnston</u> that the agreement between the prisoner and the county prosecutor was valid.

## C

Our discussion of the <u>Johnston</u> case has direct implications for Hernandez. Although we hold that he is not eligible to seek parole, he is eligible to seek clemency in the same manner that so many individuals successfully did during the years in question.[5] From what we have seen in the record, he warrants consideration. Should he be successful in having his sentences commuted to a term of years, he would then be eligible to seek parole.

---

4.      Norman G. Coppage was sentenced to life in prison on October 31, 1945, for first degree murder in Lake County. The Clemency Commission met on September 26, 1973, and voted to recommend that the Governor commute his sentence to 28 years to life. On November 1, 1973, Governor Bowen signed the Clemency Commission's recommendation. On December 7, 1973, the Parole Board granted him parole, effective immediately.

Records from minutes of the Parole Board and Clemency Commission are on file at the Indiana State Archives.

[5] In 1979, the Clemency Commission was abolished and the Parole Board formally assumed its duties. I.C. § 11-9-1-2(3) (Supp. 1979).

**Conclusion**

The decision of the post-conviction court denying in part Hernandez's petition for post-conviction relief is affirmed and its decision granting in part is reversed.  This matter is remanded to the post-conviction court with instructions to enter judgment in favor of the State.

Dickson, Boehm, and Rucker, JJ., concur.  Shepard, C.J., concurs in result without separate opinion.