**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**KEDRICE DORSEY**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEDRICE DORSEY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 46A04-1109-PC-563 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Kathleen B. Lang, Judge
Cause No. 46D01-0905-PC-78

**August 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Kendrice Dorsey appeals the denial of his petition for post-conviction relief challenging his conviction for Class A felony possession of cocaine with intent to deliver. We affirm.

## Issues

Dorsey raises four issues, which we consolidate and restate as:

> I.   whether his freestanding claims of error are available for appellate review; and
>
> II.  whether he received ineffective assistance of trial counsel.

## Facts

The facts relevant to Dorsey's conviction are:

> On April 27, 2003, at approximately 6:30 p.m., Michigan City Police Officer Marty Corley ("Officer Corley") received a radio dispatch regarding an accident involving either personal injury or property damage at the intersection of Eighth and Franklin Streets. Officer Corley proceeded to the referenced intersection, but did not observe indications of an accident. Officer Corley then responded to a second dispatch, then describing a "fight in progress" at the nearby intersection of Ninth and Oak Streets.
> Officer Corley saw Dorsey, whom he knew from prior contacts, walking away from the area. An individual known only as Donald flagged down Officer Corley and pointed to Dorsey, stating that Dorsey "was the problem." (Tr. 69). Officer Corley began to drive toward Dorsey, observing him. Dorsey moved toward his father, Bubble Gay ("Gay"), who had previously been walking approximately twenty-five to thirty feet away from Dorsey. Dorsey passed a clear plastic bag to Gay, and Gay "cuffed" the bag, closing his hand immediately over it. (Tr. 71.) Dorsey and Gay came to a stop in front of a house on Tenth Street.

2

Officer Corley stopped his vehicle, exited and began to question Dorsey about the fight. Gay moved his free hand to cover the hand holding the plastic bag. Officer Corley turned his attention to Gay and asked what was in the bag. Gay replied "nothing," but threw a clear plastic bag to the ground. Officer Corley picked up the discarded bag and could see that it contained individually packaged white rocks, consistent with the appearance of crack cocaine.

Officer Corley then began to question the men about the contents of the bag, when Dorsey began to walk away. Officer Corley told him to stop, but Dorsey refused. Officer Corley stated, "I'm not going to chase [you]. I know [who] you are. I'll just get a warrant for your arrest." (Tr. 75.) Dorsey responded, "go ahead and get the warrant," and began to run. (Tr. 75.) Officer Corley radioed for assistance, and Officer Tony McClintock ("Officer McClintock") responded. Officer McClintock pursued Dorsey on foot, and Officer Corley gave chase in his vehicle. Ultimately, Dorsey and Gay were apprehended in front of an apartment complex on Tenth Street. Both were arrested.

While Dorsey was in custody, Detective Al Bush began to question Dorsey about a shooting that Dorsey allegedly witnessed. Dorsey indicated that he wanted to talk to Detective Mark Swistek, because "the dope belonged to him and did not belong to Gay." (Tr. 138.) In a tape-recorded statement, Dorsey indicated that he sold cocaine because he could not find employment. On the evening in question, he had been in possession of thirty-five rocks of crack cocaine, and had sold fifteen. However, Dorsey had gotten involved in a fight with his girlfriend and the police were summoned. He began to walk away, with the twenty remaining rocks and $482.00 in cash.

On April 23, 2003, Dorsey was charged with Dealing in Cocaine and, on December 16, 2003, a jury found him guilty as charged. On January 28, 2004, Dorsey was sentenced to fifty years imprisonment.

Dorsey v. State, No. 46A03-0409-CR-394, slip op. 3-4 (Ind. Ct. App. Oct. 4, 2005).

Dorsey filed a direct appeal arguing, among other things, that there was insufficient probable cause because the officer present in court lacked first-hand

knowledge of Dorsey's possession of cocaine, that his confession was erroneously admitted into evidence because it was procured by a promise that Dorsey's father would be released, and that the trial court erroneously admitted evidence seized during an investigatory stop because the stop was not supported by reasonable suspicion. We affirmed his conviction in a memorandum decision. See Dorsey, No. 46A03-0409-CR-394.

Dorsey then filed a petition for post-conviction relief, which was denied after a hearing. Dorsey now appeals.

**Analysis**

Generally, the completion of the direct appeal process closes the door to a criminal defendant's claims of error in conviction or sentencing. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009). However, defendants whose appeals have been rejected are allowed to raise a narrow set of claims through a petition for post-conviction relief. Id. (citing Ind. Post-Conviction Rule 1(1)). "The scope of the relief available is limited to 'issues that were not known at the time of the original trial or that were not available on direct appeal.'" Id. (citation omitted). "Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are res judicata." Id.

A post-conviction court must make findings of fact and conclusions of law on all issues presented in the petition. Id. (citing P-C.R. 1(6)). The findings must be supported by the facts, and the conclusions must be supported by the law. Id. "Our review on appeal is limited to these findings and conclusions." Id.

4

The petitioner bears the burden of proof, and an unsuccessful petitioner appeals from a negative judgment. Id. A petitioner appealing from a negative judgment must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Id. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. Id.

### I. Freestanding Claims of Error

Dorsey argues that the admission of certain evidence was fundamental error because Officer Corley lacked reasonable suspicion, the contents of the baggie were not in plain view, and his confession was not voluntary. He also argues that fundamental error occurred because there was an insufficient factual basis to support the arrest warrant.

The post-conviction court concluded:

> The Petitioner has not raised any free-standing claims in his petition. If any free-standing claims had been made, such claims were available to be raised on direct appeal and are waived. See Timberlake, 753 N.E.2d at 597-98. To the extent that such issues were raised on direct appeal, the Court of Appeals decision is res judicata and now bars those claims.

App. pp. 246-47. Dorsey has not provided us with a copy of his post-conviction relief petition and makes no argument that he raised the freestanding claims of error in his post-conviction petition. In fact, at the post-conviction relief hearing, Dorsey agreed that the only available issue was ineffective assistance of counsel. See Tr. pp. 72, 74. To the

extent Dorsey did not raise these freestanding claims in his post-conviction relief petition, he may not raise them for the first time on appeal. See Allen v. State, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), cert. denied.

Even if these issues were raised in his petition for post-conviction relief, they are either waived because they were available at the time of his direct appeal or res judicata because they were decided on direct appeal. See Pruitt, 903 N.E.2d at 905. Further, Dorsey cannot avoid the application of the waiver doctrine by framing the issues as fundamental error in post-conviction relief proceedings. See State v. Hernandez, 910 N.E.2d 213, 216 (Ind. 2009) (rejecting fundamental error argument in post-conviction relief proceedings); Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997) (noting that while concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objection rule on direct appeal, its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to circumstances involving the deprivation of the Sixth Amendment right to effective assistance of counsel or an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal), cert. denied. Thus, Dorsey's freestanding claims of error are not available for appellate review.

## II. Ineffective Assistance of Counsel

Dorsey also argues that he received ineffective assistance of trial counsel. "To establish a post-conviction claim alleging the violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish before the post-conviction

court the two components set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." <u>Kubsch v. State</u>, 934 N.E.2d 1138, 1147 (Ind. 2010), <u>cert. denied</u>. First, a defendant must show that counsel's performance was deficient by establishing that counsel's representation fell below an objective standard of reasonableness and that "'counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 687, 104 S. Ct. at 2064). A defendant must also show that the deficient performance prejudiced the defense by establishing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> "Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." <u>Id.</u>

### A. Recording of Probable Cause Hearing

Dorsey appears to argue that counsel was ineffective for failing to investigate and raise the issue of whether the probable cause hearing was recorded. Dorsey first objects to the following conclusion by the post-conviction court:

> 8. <u>Probable Cause</u> - Petitioner alleges that his trial counsel was ineffective for failing to investigate or raise the issue of the failure to record the probable cause hearing. The issue of whether there was insufficient evidence to establish probable cause was raised on appeal and the Court of Appeals decided adversely to Petitioner on this issue. The Court of Appeals decision is <u>res judicata</u> and any challenge to the sufficiency of probable cause is barred. In addition, Petitioner was aware of this issue on appeal and failed to request that the probable cause hearing be transcribed. To the extent the issue could have been raised on appeal and was not, it has been waived.

7

App. p. 248.

Dorsey argues that the claim could not have been res judicata and waived at the same time. It appears to us, however, that the post-conviction court was explaining that, because Dorsey asserted on direct appeal that the testimony at the probable cause hearing was insufficient to establish probable cause and we decided it was, he may not challenge the sufficiency of probable cause in post-conviction proceedings. Similarly, the post-conviction court correctly observed that any freestanding claim of error related to the recording of the probable cause hearing was not available in post-conviction proceedings because it was known and available at the time of Dorsey's direct appeal. Dorsey has not established that this conclusion is contrary to law.

Regarding whether the failure to investigate and raise the issue of the recording of the probable cause hearing amounted to ineffective assistance of counsel, the post-conviction court concluded:

> 9. Petitioner has presented no evidence to prove that the probable cause hearing was not recorded. The information shows that the Court found probable cause based on the testimony of Detective Bush. If after the probable cause hearing, the Court determined that the facts submitted were not sufficient to establish probable cause, the Court would have ordered the Petitioner released. If indeed the probable cause hearing was not recorded, nothing in the statute requires the release of the Petitioner. Only the lack of probable cause triggers a release. In addition, even if the Petitioner could establish that the probable cause hearing was not recorded he must establish prejudice to prevail on a claim of ineffective assistance. Petitioner was not prejudiced as on direct appeal, the Court of Appeals held that there was probable cause for Petitioner's arrest.

8

Id.

In an attempt to establish that the probable cause hearing was not recorded, Dorsey relies on a 2003 pro se pretrial discovery request, which apparently did not result in the production of a transcript of the probable cause hearing, and a February 2006 motion for completion of the record, which was denied. Although it does not appear that a transcript of the probable cause hearing has been produced, we are not convinced that the lack of transcript based on these two requests establishes that the probable cause hearing was not in fact recorded.

Moreover, even if the probable cause hearing was not recorded, Dorsey has not established that the lack of recording would have resulted in his immediate release. Indiana Code Section 35-33-7-2 provides:

> (a) At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit. In lieu of the affidavit or in addition to it, the facts may be submitted orally under oath to the judicial officer. If facts upon which the arrest was made are submitted orally, the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed.
>
> (b) If the judicial officer determines that there is probable cause to believe that any crime was committed and that the arrested person committed it, the judicial officer shall order that the arrested person be held to answer in the proper court. If the facts submitted do not establish probable cause or if the prosecuting attorney informs the judicial officer on the record that no charge will be filed against the arrested person, the judicial officer shall order that the arrested person be released immediately.

9

The issue before us is not whether there was probable cause to arrest Dorsey. We have already decided there was. See Dorsey, No. 46A03-0409-CR-394, slip op. 5-6. The issue is whether the failure to record a probable cause hearing requires immediate release.

In support of his argument, Dorsey cites to State v. Davis, 770 N.E.2d 338 (Ind. Ct. App. 2002), in which we affirmed the trial court's granting of a motion to suppress evidence seized during the execution of a telephonic search warrant. In Davis, the police officer seeking the search warrant attempted to record the conversation with the judge but the machine inexplicably failed to record it, resulting in the failure to comply with the Indiana Code Section 35-33-5-8, the statute governing telephonic search warrants. We concluded, "When, in addition to numerous procedural defects, the warrant conversation is not recorded, as in this case, the result is a near total failure to comply with the procedures set out in the statute. The warrant in this case is more appropriately characterized as nonexistent." Davis, 770 N.E.2d at 342.

Even in light of Davis, Dorsey has not established that trial counsel's performance regarding the regarding the recording of the probable cause hearing was deficient. Davis is easily distinguishable because the telephonic search warrant statute is different from the probable cause hearing statute. Moreover, the result in Davis was the suppression of evidence, not his immediate release, which Dorsey suggests is the proper remedy for the failure to record a probable cause hearing.

As for prejudice, at the post-conviction relief hearing, Dorsey called Gregory Lewis, the attorney who initially reviewed Dorsey's case for post-conviction relief proceedings. Lewis testified that he advised Dorsey that, even if the probable cause

10

hearing was not recorded, Dorsey would not be entitled to relief because the probable cause finding could be reconstructed. He testified that his research indicated that the failure to record a probable cause hearing is "not a get out of jail free card." Tr. p. 52. Thus, because Davis is easily distinguishable from the facts of this case and based on Lewis's testimony, Dorsey has not established that the post-conviction court's conclusion on this issue is contrary to law.

### B. Continuing Objection

Dorsey argues that trial counsel was ineffective because he failed to make a proper continuing objection to the admission of certain evidence. On this issue, the post-conviction court concluded:

> 14. The Court of Appeals found that Officer Corley's own observations gave him a reasonable suspicion of criminal activity that justified the Petitioner's detention. (Memorandum Decision, p. 9.). Accordingly, Petitioner cannot establish prejudice as an objection by trial counsel would not have been sustained. Petitioner's claim of ineffective assistance of counsel based on the failure to [sic] evidence obtained at the time of his arrest must fail.

App. p. 250.

On direct appeal, Dorsey argued that Officer Corley, acting on an anonymous tip, lacked reasonable suspicion to conduct an investigatory stop. Dorsey, No. 46A03-0409-CR-394, slip op. 7. On direct appeal, we stated that no contemporaneous objection was made at trial and reviewed the record for fundamental error. Id. We concluded, "Officer Corley had a reasonable suspicion that criminal activity might be afoot, to justify

11

Dorsey's detention." Id. at 9. We held that Dorsey had not demonstrated fundamental error.

As an initial matter, although on direct appeal we stated that Dorsey did not make a contemporaneous objection to the admission of the evidence, at the beginning of trial, counsel renewed the motion to suppress and motion in limine and requested "a continuing ongoing objection" to the introduction of any evidence subject to those motions. App. p. 51. After discussing the matter, the trial court ruled, "I will note that this is going to be an ongoing objection throughout the course of the trial, and my ruling will be the same." Id. at 52. Thus, contrary to Dorsey's argument, we are not convinced that the manner in which the continuing objection was made fell below an objective standard of reasonableness.

Dorsey also seems to suggest that the post-conviction court erroneously concluded that he was not prejudiced by the failure to object. Based on our decision on direct appeal, however, it is clear that Officer Corley had reasonable suspicion to detain Dorsey. Thus, regardless of the propriety of trial counsel's objection, Dorsey has not established that an objection would have been sustained or that this issue would have been a basis for reversing Dorsey's conviction on direct appeal. Dorsey has not established that the post-conviction court's conclusion on this issue was contrary to law.

### Conclusion

Dorsey's freestanding claims of error are not available for appellate review. Dorsey has not established that the post-conviction court's conclusions regarding his allegations of ineffective assistance of counsel are contrary to law. We affirm.

12

Affirm.

VAIDIK J., and MATHIAS, J., concur.