**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 15 2013, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**WILLIAM BEELER**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL N. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM BEELER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1209-PC-480 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-0606-PC-114856

**October 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

William Beeler appeals the denial of his petition for post-conviction relief (PCR).  He presents multiple issues for our review, which we consolidate[1] and restate as:

1. Whether Beeler's trial counsel was ineffective because counsel did not:

   a. Challenge two jurors;

   b. Move to suppress a burgundy lawn chair found at Beeler's home;

   c. Object to Shannon Pratt Parsley's testimony regarding Beeler's appearance on a particular day; and

   d. Object to statements the prosecutor made during closing argument; and

2. Whether Beeler's appellate counsel was ineffective because counsel did not:

   a. Challenge Beeler's sentence based on Ind. Code § 35-50-1-2; and

   b. Challenge the sentencing court's alleged failure to give proper weight to a mitigating circumstance.

We affirm.

---

[1] Indiana Appellate Rule 46(A)(8)(a) requires that an argument on appeal "contain the contentions of the appellant on the issues presented, supported by cogent reasoning.  Each contention must be supported by citations to authorities, statutes, the Appendix or parts of the Record of Appeal relied on[.]"  Beeler failed to follow App. R. 46(A)(8)(a) with regard to three of the issues he presents on appeal, specifically: (1) whether the post-conviction court abused its discretion when it denied Beeler's request to issue subpoenas for four trial witnesses; (2) whether the post-conviction court erred when it denied Beeler's request for a printed transcript from his PCR evidentiary hearing for use during the preparation of his Proposed Findings of Fact and Conclusions of Law; and (3) whether Beeler's trial counsel was ineffective for failing to move to suppress a photo array.  Accordingly, those issues are waived from our consideration.  *See Matheney v. State*, 688 N.E.2d 883, 907 (Ind. 1997) (failure to make a cogent argument supported by citation to authority results in waiver of issue on appeal).

# FACTS AND PROCEDURAL HISTORY

The facts surrounding Beeler's convictions, as iterated in his direct appeal, are as follows:

> Days before the robbery, bank customer Warren Mann saw a black male sitting in a black Ford Taurus. The Taurus was parked where employees typically parked and had been backed into the parking space, so that the car faced the bank. Suspicious, Mann wrote down the numbers of the license plate, but omitted one letter.
>
> At 8:00 a.m. on June 16, 2006, bank employees Christopher Ferguson and Liza Burge opened the bank for business. A customer, Max Martens, immediately entered. At approximately 8:02 a.m., Beeler entered and pointed a handgun at Burge. At Beeler's direction, Ferguson closed the blinds in the drive-through area. Ferguson used duct tape to bind Burge's and Martens' arms behind them and to cover their mouths. Bound, Burge and Martens sat in a small copy room. Beeler forced Ferguson to the tellers' drawers and instructed him to place the cash into a burgundy bag with a black strap. Long and cylindrical, the bag appeared to be the sort designed to carry a fold-up camping chair. Ferguson complied.
>
> As Beeler and Ferguson then approached the vault, they heard the front door open. Claudine Polley and her eight-year-old son entered. Ferguson approached them and told them to follow Beeler's instructions. Beeler took Polley's purse and her son's GameBoy, and instructed them to sit down outside the copy room. They did so. By this time, there were six people in the bank: Beeler and the five people alleged to have been confined. Beeler and Ferguson then emptied the vault. Although Beeler repeatedly instructed Ferguson not to look at him, Ferguson did so several times. Beeler left the bank with more than $210,000 in cash. He exited and greeted Sandra Whitaker as she entered the bank. Ferguson contacted authorities.
>
> At 9:00 a.m., Mann, the customer who days before had written down the partial license plate number, returned to the bank to find the investigation in progress. Days later, Mann reported his observations and the license plate information to Lawrence Police Officer Gary Woodruff. Officer Woodruff searched all twenty-six possible license plate combinations and found one black Ford; it was registered to Beeler, a black male. Over approximately the same period, Beeler purchased a car ($5512), used two money orders to pay rent that had been due at the beginning of the month ($1060), and used cash to purchase a mattress ($954) and other furniture ($1558). Police searched

Beeler's new car and his apartment, and found $1200 in cash and a burgundy lawn chair.

*Beeler v. State*, 49A05-0708-CR-467 (Ind. Ct. App., May 14, 2008), *trans. denied*.

Beeler was convicted of robbery and five counts of criminal confinement, and he was determined to be an habitual offender. He appealed his convictions and sentence, and we affirmed.

On February 11, 2009, Beeler, *pro se*, filed a petition for PCR alleging ineffective assistance of trial and appellate counsel. The court appointed counsel for him on March 4, but counsel withdrew on October 19. On January 19, 2011, Beeler, *pro se*, filed an amended petition for PCR. The post-conviction court held an evidentiary hearing. After the parties filed proposed findings of fact and conclusions of law, the post-conviction court denied Beeler's petition.

## DISCUSSION AND DECISION

We first note Beeler proceeds in this appeal *pro se*. A litigant who proceeds *pro se* is held to the rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*. One risk a litigant takes when he proceeds *pro se* is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id.* When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

Post-conviction proceedings provide defendants with the opportunity to raise issues that were not available on direct appeal or were not known at the time of the trial. *State v. Hernandez*, 910 N.E.2d 213, 216 (Ind. 2009). Claims available, but not presented, on direct appeal are not available for post-conviction review. *Id*. Thus, not all issues are available in a post-conviction proceeding; challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id*.; Post Conviction Rule 1(1). A petitioner for PCR cannot avoid application of the waiver doctrine by asserting fundamental error. *Id*. Rather, complaints that something went awry at trial are generally cognizable only when they demonstrate deprivation of the right to effective counsel or were demonstrably unavailable at the time of trial or direct appeal. *Id*.

1.    Ineffective Assistance of Trial Counsel

A successful claim of ineffective assistance of trial counsel must satisfy two components. First, the defendant must show deficient performance - representation that fell below an objective standard of reasonableness involving errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied*. Second, the defendant must show prejudice - a reasonable probability (*i.e.,* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id*.

Beeler argues his trial counsel, Marla Thomas, was ineffective for:

Not challenging for cause two bias[ed] jurors [Susan Jodka and Nicole Groeschen] during voir dire, and by not attempting to suppress or object to an illegally obtained chair, and a suggestive Photo Array from being entered into evidence. Also Ms. Thomas allowed a State witness to give unchallenged

5

opinion testimony that was highly prejudicial and went beyond the limine [sic] agreement. Ms. Thomas did not enter into evidence various statements made, and point out inconsistencies of State witnesses that would have lead [sic] to a successful impeachment of their identification testimony. The [PCR] Court should have found error in Ms. Thomas allowing the State to incorrectly represent the time of viewing of the robber by a State witness, and the income of a Defense witness who made a personal loan to the Defendant in the State's closing. These cumulative errors and deficiencies clearly show that Ms. Thomas was ineffective in her representation of the Defendant.

(Br. of Appellant at 6.) We cannot hold trial counsel was ineffective.

### a. Juror Challenges

Regarding Thomas' decision not to challenge two jurors, the PCR court found:[2]

Ms. Thomas does not recall a juror named Susan Jodka; she does recall one of the jurors saying that her son know [sic] deputy prosecutor Massillamany and is positive that she did question the juror about that. Regarding that juror, Ms. Thomas added: [sic] that the court had already determined that her answers were that she could be fair and impartial, that there had not been contact between the juror and deputy prosecutor for a decade, and that the juror's husband was a defense attorney therefore Ms. Thomas thought that she would be a good juror.

Ms. Thomas does not recall Nicole Groeschen or her saying that she could not be impartial if the victim was a child.[3] Ms. Thomas did not believe it was important to question her regarding a burglary in which she was a victim and noted that being a victim of crime is not automatic grounds to challenge for cause. Ms. Thomas added that a lot of times the information that is written on the juror's questionnaires will influence the questions that she decides to ask or not to ask.

Ms. Thomas does not recall Beeler saying that he did not want either of these women as jurors. Ms. Thomas knows that she would have had discussions with Beeler during jury selection and that she always asks her clients to let her know if they have a bad feeling about someone, but she does

---

[2] We commend the PCR court on its extensive and well-detailed findings and conclusions. The thoroughness of the court's order facilitated our review of this complex matter.

[3] Beeler then read a portion of the jury transcript which reflected that Ms. Thomas did let the juror know that one of the alleged victims in the case was a 9-year-old boy and the juror responded that she believed she could be fair. The transcript of *voir dire* is not otherwise before this court, as Beeler did not offer it as evidence.

not have any recollection about specific conversation regarding specific jurors in this case because four years have passed since the jury. Ms. Thomas testified that she would have considered any concerns that Beeler had conveyed to her during jury selection. Ms. Thomas also testified that is [sic] she believed that there were grounds to challenge any juror for cause, then she would have moved to strike them for cause.

(App. at 71-72) (footnote in original). Based on those findings, the PCR court concluded:

Trial counsel's post-conviction testimony established that she would have made a challenge for cause of any potential juror that she believed warranted such a challenge. Regarding her questioning of these jurors to explore possible bias, it is clear from Ms. Thomas's post-conviction testimony that she did ask such questions, that the prospective jurors responded that they could be fair, that Ms. Thomas considered all factors including information on jury questionnaire in determining who would be the most favorable jurors for her client, and that she also considered input from Beeler in making these decisions. See Findings and [sic] Fact, paragraph 12, supra. Petitioner has not shown otherwise and has failed to meet his burden of proving deficient performance here.

Further, Petitioner chose not to submit a transcript of the *voir dire* proceedings. From the portions of *voir dire* that Beeler read in questioning trial counsel during the post-conviction relief hearing, there was no indication that the outcome of the trial could have been more favorable to Petitioner had trial counsel asked additional questions or handled *voir dire* differently. There is no evidence of prejudice in his claim.

(*Id*. at 78.)

On appeal, Beeler includes in his argument quotations from the *voir dire* transcript. As the *voir dire* transcript was not in evidence before the PCR court, we are unable to consider it. *See Bernel v. Bernel*, 930 N.E.2d 673, 676 n. 2 (Ind. Ct. App. 2010) ("A trial court can decide the issues based only upon that evidence which is properly before the court and in the record, and we are bound by that record on appeal."), *trans. denied*.

b.    Suppression of Burgundy Chair

To show ineffective assistance based on counsel's failure to object, a petitioner must demonstrate the trial court would have sustained the objection.  *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003).  The petitioner must also establish prejudice.  *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind. 1997), *reh'g denied*.

Beeler claimed Thomas should have objected or moved to suppress a burgundy chair found in Beeler's home.  The PCR court found:

> Regarding the burgundy lawn chair, Ms. Thomas does not necessarily agree that law enforcement must get an additional search warrant to seize items beyond those listed in the probable cause warrant and believes that it depends on the circumstances.  Ms. Thomas believes that the only evidence at trial regarding the chair coming in a bag was testimony that it was the kind of chair that typically comes in a bag.  She does not recall specifically but believe [sic] that the State's justification for seizing the chair was something that would have come from the long, thin dark-colored duffle bag as depicted in the video.  Ms. Thomas testified that she did not move to suppress the lawn chair because they would still have been able to testify about seeing it when they entered to serve the warrant.  She explained that anytime the police are in a place where they have a lawful right to be, they can testify about what they saw.

(App. at 72.)  Based on those findings, the PCR court concluded Thomas was not ineffective because, had she filed a motion to suppress or made an objection to the admission of the burgundy chair, that motion or objection would have been denied based on long-standing case law.  (*Id*. at 79.)  We agree.

In *Bigler v. State*, our Indiana Supreme Court held that when officers are executing a legally obtained search warrant, they are

> authorized to seize other items of property not listed in the search warrant if they . . . are properly in a position from which could view a particular area,

8

they discover incriminating evidence inadvertently and it is immediately apparent to them the items they observe may be evidence of a crime, contraband or otherwise subject to seizure.

540 N.E.2d 32, 34 (Ind. 1989). In *Pavey v. State*, we held police could seize a black leather jacket discovered in plain view during the execution of a legally-obtained search warrant even though the jacket was not on the list of items to be seized, because witnesses indicated the person who committed the crime was wearing dark clothing. 764 N.E.2d 692, 702-03 (Ind. Ct. App. 2002), *trans. denied.* Based on *Bigler* and *Pavey*, we cannot say the post-conviction court erred in concluding a motion to suppress or objection would not have been granted, and therefore Beeler has not demonstrated Thomas was ineffective. *See Glotzbach*, 783 N.E.2d at 1224 (PCR petitioner must demonstrate trial court would have sustained objection).

### c.    Objection to Parsley's Testimony

The trial court granted a motion *in limine* prohibiting Shannon Pratt Parsley, the person to whom Beeler paid his rent,  from "giving her opinion that Beeler was the robber depicted in photos from the bank surveillance video." (App. at 83.)  During trial, Parsley testified regarding what Beeler was wearing when he delivered his rent payment to her two days after the robbery.  Beeler argues Thomas should have objected to Parsley's testimony because it violated the motion *in limine* and was impermissible opinion testimony.  We disagree.

Thomas told the PCR court "she [did] not believe that [Parsley's] testimony went beyond the scope of the motion *in limine*." (*Id*. at 73.)  Based on that statement, the PCR

court concluded Thomas was not ineffective because an objection would not have been successful.

The PCR court was correct. Parsley's testimony addressed her impression of Beeler on the day he delivered his rent to her, not her reaction upon viewing the bank surveillance video. Her testimony was permissible under Ind. Evid. Rule 602 (witness may testify only about something of which he has personal knowledge), and did not violate the motion *in limine*. Had Thomas made an objection, it would not have been sustained. Thus, Beeler has not demonstrated Thomas was ineffective for failing to object to Parsley's testimony.

        d.       <u>Objections to Closing Arguments</u>

Beeler argues Thomas should have objected twice during the State's closing argument. The PCR court found:

> Regarding the witness who testified that he loaned ten thousand dollars to [Beeler], Ms. Thomas does recall the witness but not the specifics. If the State misstated facts about that witness's gross income in closing argument, Ms. Thomas testified that she would not have objected to something like that because the jury would pick up on it and it would hurt the State, not help them [sic]. Ms. Thomas testified that argument is [an] interpretation of the facts, and that she gets to do that as well as the State. She also testified that objecting to a minor point in the State's closing argument could end up drawing more attention to it.
>
> Regarding the State pausing for thirty second [sic] in their [sic] closing argument, Ms. Thomas testified that is a good thing because that is less time that they [sic] have to speak to the jury. She does not remember the details regarding what the State said about Liza [sic] Burge's testimony in its closing argument. If the State did say that Ms. Burge observed the robber for two to three minutes, Ms. Thomas explained that such a statement was not objectionable because the witness did testify to that initially. Ms. Thomas believes that she was able to show on her cross-examination of Ms. Burge that she had considerably less time than that to observe the robber, but that to object to this in closing argument would have just made her and the defendant look bad because the judge would never have sustained the objection and

10

would have said that was part of her testimony.

(App. at 74.) Based on that finding, the PCR court concluded Beeler had not demonstrated any objection would have been sustained, that Thomas' decisions not to object were strategic, and Beeler was not prejudiced. We agree.

Beeler's argument on appeal seems to focus on what he perceives as misstatements of the evidence presented at trial. The statements to which he takes issue are not misstatements at all. Regarding the witness' income, the PCR court noted:

> Beeler argues in his proposed findings and conclusions that trial counsel should have objected to the State's reference in closing argument to Steve Hutchinson's net income as $40,000 when Mr. Hutchinson testified at trial that his income was $190,000 and his business income was $40,000. It is Petitioner who misstates the evidence here. See [Trial Transcript] 621 (Hutchinson testified that the 2005/2006 for Hutchison [sic] Trucking was $190,000 "minus deductions, expenses, and things of that nature."); T.R. 623 (Hutchison [sic] testified that after taxes his ordinary business income for 2006 was $40,459).

(*Id*. at 86) (footnote omitted). The PCR court also noted Burge testified she saw the robber for two to three minutes, as indicated in the State's closing argument. Finally, even if there were misstatements and Thomas should have objected, Beeler offered no evidence, nor does he argue on appeal, that he was prejudiced by Thomas' performance. Therefore, he has not demonstrated Thomas was ineffective for failing to object to the statements in closing argument.

### 2. Ineffective Assistance of Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed using the same standard as claims of ineffective assistance of trial counsel. *Taylor v. State*, 717 N.E.2d 90,

11

94 (Ind. 1999). These claims generally fall into three categories: (1) denying access to appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler,* 690 N.E.2d at 193-95. Relief is appropriate only when we are confident we would have ruled differently. *Id*. at 196. Beeler argues counsel was ineffective for failing to raise on appeal the trial court's alleged misinterpretation of Ind. Code § 35-50-1-2 and the trial court's failure to give weight to Beeler's proffered mitigating circumstances.

> a.      Ind. Code § 35-50-1-2

The trial court sentenced Beeler to twenty years for Class B felony robbery, to be served consecutive to the thirty-year aggregate sentence[4] for the five counts of criminal confinement.[5] Beeler argues appellate counsel should have argued his sentences for criminal confinement could not be served consecutively because criminal confinement is not a "crime of violence" as defined by Ind. Code § 35-50-1-2(a).

Pursuant to Ind. Code § 35-50-1-2:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Beeler was convicted of five counts of Class B felony criminal confinement. The advisory

---

[4] The trial court sentenced Beeler to fifteen years for each of the criminal confinement convictions. His criminal confinement convictions were numbered II – V. Counts II and III were to be served concurrently with each other and consecutive to Counts VI and V, which were to be served concurrently with each other, for a total of thirty years.

[5] Beeler's aggregate sentence was seventy years, based on forty years imposed for robbery and thirty years imposed for criminal confinement.

sentence for a Class A felony is thirty years. Beeler's aggregate sentence for the five counts of Class B felony criminal confinement was thirty years, and thus an argument challenging the consecutive sentences would not have prevailed. Appellate counsel was not ineffective for failing to present the issue on appeal.

b.     Failure to Give Mitigating Circumstances Weight

Beeler also contends appellate counsel should have argued the trial court "assigned too much weight to the 1985 Robbery conviction of the Defendant, because the length of time between like crimes was beyond ten years the robbery should have received low weight." (Br. of Appellant at 18) (citations omitted). In 2007, our Indiana Supreme Court held in *Anglemyer v. State*: "Because the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). Thus, in 2008, when Beeler brought his direct appeal, any argument regarding the weighing of aggravators or mitigators would have failed. Appellate counsel was not ineffective for failing to present that issue on appeal.

**CONCLUSION**

Beeler did not demonstrate trial counsel was ineffective for failing to file a motion to suppress or to object to the admission of a burgundy lawn chair because he did not show such a motion or objection would have been sustained. Nor was trial counsel was ineffective for failing to object to Parsley's testimony, as Beeler did not show the objection would have been

13

sustained. Beeler was not prejudiced when trial counsel did not object to two statements made during the State's closing argument. Finally, Beeler did not show appellate counsel was ineffective because both sentencing arguments now asserted by Beeler would have been meritless. Accordingly, we affirm the denial of post-conviction relief.

Affirmed.

BAKER, J., and MATHIAS, J., concur.